**Jesus TINEO, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Nos. 95 Civ. 10768(MJL), 93 Civ. 3564(MJL) and 89 Cr. 1017 (MJL).**

United States District Court, S.D. New York.

Dec. 20, 1996.

249

Mary Jo White, United States Attorney, Southern District of New York, New York City by Mei Lin Kwan–Gett, Assistant United States Attorney, for U.S.

Jesus Tineo, Minersville, PA, Pro se .

## OPINION AND ORDER

LOWE, District Judge.

Before the court is the motion of petitioner Jesus Tineo ("Petitioner" or "Tineo"), pursuant to 28 U.S.C. § 2255 ("Section 2255"), to vacate, set aside or correct his sentence. For the reasons stated below, the Court denies Petitioner's motion.

## BACKGROUND

On June 4, 1990, Petitioner pleaded guilty to charges of conspiracy to knowingly possess cocaine base ("crack") with the intent to distribute it in violation of 21 U.S.C. §§ 812, 841 and 846 ("Count I") and possession with intent to distribute crack in violation of 21 U.S.C. §§ 812 and 841 ("Count II"). *See* Plea Tr. at 3.

At the plea allocution,[1] the Court asked Petitioner to describe in his own words "what it is [he] did which cause[d] [him] to believe [he], in fact, [was] guilty of the counts of the [I]ndictment." *Id.* at 7. The Court directed Petitioner to look at the conspiracy charge in Count I of the Indictment and to describe what he did that caused him to plead guilty to Count I. *Id.* at 8. Petitioner then acknowledged that: (1) he and Ricardo Alers ("Alers") (a co-conspirator named in the Indictment) were "selling drugs together as a business," (2) Alers asked him to "sell" 211 grams of crack to his friends (a policeman and an undercover agent), (3) he agreed to "do the deal" because "we were going to earn $200" each, (4) "we went and sold the drugs," and (5) "the drugs belonged to us [Petitioner and Alers]." *See id.* at 8–10.

Describing his role in the drug transaction, Petitioner stated that he: (1) went with Alers to meet the policeman, (2) told the undercover agent to show him the money, (3) talked to the undercover agent "about the transaction, how much the drugs cost and how many ounces the undercover wanted," (4) told Alers that he "didn't like the deal because [he] thought [the undercover agent] could be a policeman," and (5) gave the "crack" cocaine to Alers to consummate the deal while he

stayed at home. *Id.* at 8–9. Petitioner admitted that the conspiracy occurred on December 14, 1988, the date of the conspiracy charged in Count I. *Id.* at 9.

Turning to Count II, the Court asked Petitioner if he had the 211 grams of "crack" in his possession on December 14, 1988. *Id.* Petitioner admitted that he "gave" the "crack" to Alers and that the "drugs belonged to us [Alers and Petitioner]." *Id.* at 9–10. Petitioner acknowledged that he knew it was against the law to possess and sell "crack." *Id.* at 10. The Court also explained the applicable statutory maximum and minimum sentences for counts I and II, and Petitioner acknowledged that he understood the possible sentences he faced. *Id.* at 9.

The Court then inquired about the voluntariness of Petitioner's plea. *Id.* at 10. In response, Petitioner made clear that his plea was not induced by promises and stated that "[n]obody is forcing me." *Id.* When asked by the Court if he was satisfied with trial counsel's representation, Petitioner replied, "Of course, because he's been sincere with me." *Id.* at 15. Petitioner acknowledged that trial counsel had answered any questions that he may have had. *Id.* Before adjourning for the sentencing hearing, the Court asked Petitioner if anything had happened at the plea allocution which he did not understand or which needed further explanation. *Id.* Petitioner responded: "No. Everything is all right." *Id.*

Prior to sentencing, the United States Probation Department filed a Presentence Investigation Report ("PSI") which recommended a base offense level under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") of 34 based upon the quantity of crack Petitioner possessed and conspired to distribute. *See* PSI ¶ 21. In addition, the PSI recommended a two-level enhancement, pursuant to U.S.S.G. § 3B1.1 ("Section 3B1.1"), for Petitioner's role in the offense and a two-level enhancement, pursuant to U.S.S.G. § 2D1.1(b)(1) ("Section 2D1.1(b)(1)"), based upon the presence of

---

**1.** Petitioner was represented by counsel, Heriberto Cabrera, at the plea allocution and sentencing hearing.

firearms during the commission of the crime. *See id.* ¶¶ 22, 23. The PSI also suggested a two-level reduction, pursuant to U.S.S.G. § 3E1.1(a) ("Section 3E1.1(a)"), for Petitioner's acceptance of responsibility. *See id.* ¶ 27. As a result, the total offense level recommended was 36, which carries a sentencing range of 188 to 235 months of imprisonment. *Id.* at 10.

On September 20, 1990, the Court conducted a sentencing hearing on two disputed issues: (1) the two-level enhancement for Petitioner's role in the offense, *see* U.S.S.G. § 3B1.1(c), and (2) the two-level enhancement for the presence of firearms, *see* U.S.S.G. § 2D1.1(b)(1). Petitioner's counsel objected to the probation officer's recommendation to enhance Petitioner's sentence for his role in the offense and the presence of firearms. *See* Sentencing Tr. at 2–3. Special Agent Walter R. Serniak ("Agent Serniak")[2] testified on behalf of the Government. The Court found that the Government had established Petitioner's role as "boss" of the conspiracy by a preponderance of the evidence. *See id.* at 92. The Court based its finding not only on Agent Serniak's testimony, but also on Petitioner's statements during the plea allocution. *See id.* at 90–92. Accordingly, the Court enhanced Petitioner's sentence by two levels for his leadership role in the conspiracy. *Id.* at 92. The Court, however, did not increase Petitioner's sentence for the presence of firearms. *Id.* at 93.

At the sentencing hearing, Petitioner moved to withdraw his plea on the grounds that it had been entered involuntarily. *Id.* at 36. The Court rejected Petitioner's request, finding that Petitioner's retraction of his plea lacked credibility. *Id.* at 38, 97. In light of Petitioner's attempt to withdraw his plea, the Court denied any downward adjustment for acceptance of responsibility under Section 3E1.1(a). *Id.* at 97–98. The Court sen-

tenced Petitioner to 211 months imprisonment and fined him $100. *Id.* at 100–02.

On appeal, Petitioner was represented by new counsel, Mark Freyberg. Petitioner appealed his sentence on the ground that he was improperly denied a two-level reduction for his acceptance of responsibility under Section 3E1.1(a). The Second Circuit rejected Petitioner's argument. Concluding that Petitioner's sentencing testimony "contradicted his earlier testimony at the plea allocution in several material ways," the Second Circuit affirmed this Court's finding that Petitioner's attempts to demonstrate his acceptance of personal responsibility for his criminal conduct were "not credible." *See United States v. Tineo*, No. 89 Cr. 1017, slip op. at 2 (2d Cir. Oct. 16, 1992).

On May 27, 1993, Petitioner, proceeding *pro se,* moved the Court, pursuant to Section 2255, to vacate his sentence on the grounds that he: (1) received ineffective assistance of counsel at trial and (2) entered his plea involuntarily due to the promises of his attorney and the prosecutor that his sentence would not exceed ten years. *See* 1993 Pet. at 4.[3] By order dated February 22, 1994 ("February 1994 Order"), the Court denied Petitioner's motion. *See* February 1994 Order at 2. The Court found that Petitioner's failure to show "cause" for not raising his claims on direct appeal barred review of his Section 2255 petition. *See id.* at 1. Additionally, the Court rejected Petitioner's claims on the merits, finding that the record clearly established that Petitioner's counsel had informed Petitioner about the potential minimum and maximum sentences and that he had fully understood the ramifications of pleading guilty to his sentence. *See* February 1994 Order at 2.

On November 30, 1995, Petitioner, again proceeding *pro se,* filed his second Section 2255 petition.[4] In his motion, Petitioner asks

---

2. Agent Serniak was a case agent of the DEA task force that investigated Petitioner, Alers and Miguel Fermin ("Fermin") (a co-conspirator named in the Indictment).

3. Petitioner was an inmate at F.C.I. Allenwood in White Deer, Pennsylvania when he filed his first Section 2255 petition. Petitioner was subse-

quently transferred to F.C.I. Schuylkill in Minersville, Pennsylvania.

4. On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), which imposes several new restrictions on successive habeas corpus petitions. The instant petition was filed

**252**

the Court: (1) to reconsider its refusal to grant him a downward adjustment for acceptance of responsibility; (2) to vacate his plea and sentence due to the Court's alleged failure to comply with Federal Rule of Criminal Procedure 11 ("Rule 11"); (3) to grant a "rehearing" of his ineffective assistance of counsel claim; and (4) to vacate his sentence due to the Court's sentencing errors. *See* 1995 Pet'r's Mem. Supp. § 2255 at 32 ("Pet'r's Mem."). The alleged sentencing errors include the Court's: (a) failure to comply with Federal Rule of Criminal Procedure 32(a)(1)(A) ("Rule 32(a)(1)(A)"); (b) erroneous enhancement of Petitioner's offense level for his leadership role in the offense under Section 3B1.1(c); and (c) failure to grant Petitioner a downward departure based upon his alien status under Section 5K2.0 of the Guidelines ("Section 5K2.0"). *See* 1995 Pet. at 5, 9, 14, 19, 34; Pet'r's Mem. at 5–6.

On November 19, 1996, the Court notified Petitioner that the Government, in response to the instant petition, had asserted an abuse of the writ and instructed him to disprove the alleged abuse. *See* November 1996 Order at 2. The Court ordered Petitioner to submit papers addressing how the new claims in his second Section 2255 petition satisfied the "cause" and "prejudice" test articulated in *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). *Id.* at 2.

Because Petitioner asserts new as well as previously raised claims, the Court will consider them separately, as different legal standards apply to each.

on November 30, 1995, five months prior to the enactment of AEDPA. The AEDPA does not specify whether it applies retroactively. However, in *Boria v. Keane,* 90 F.3d 36, 37–38 (2d Cir.1996), the Second Circuit, on a petition for rehearing by the State, found that AEDPA provides no indication that Congress intended that it apply to pending non-capital cases, and coupled with the presumption against retroactivity, held that it should not be so applied. *See also Reyes v. Keane,* 90 F.3d 676 (2d Cir.1996) (declining to apply AEDPA retroactively); *Grady v. Artuz,* 931 F.Supp. 1048, 1054 n. 1 (S.D.N.Y.1996) (same); *Delarosa v. Portuondo,* 1996 WL 363106, at *1 n. 1 (S.D.N.Y. July 1, 1996) (same). The Court applies the same reasoning and finds that AEDPA does not apply to petitions, as here, filed prior to its enactment.

## DISCUSSION

### I. *Claim Previously Appealed and Denied*

#### A. *Downward Departure for Acceptance of Responsibility*

Section 2255 [5] may not be employed to "relitigate questions which were raised and considered on direct appeal." *Riascos–Prado v. United States,* 66 F.3d 30, 33 (2d Cir.1995) (citation omitted); *Douglas v. United States,* 13 F.3d 43, 46 (2d Cir.1993) ("[Any] claim raised . . . [in a Section 2255 petition] that was also raised . . . on direct appeal . . . is precluded from consideration by this Court."); *Giacalone v. United States,* 739 F.2d 40, 44 (2d Cir.1984) (finding summary order rejecting claim on direct appeal sufficient to bar consideration of same claim under Section 2255 petition).

Petitioner challenges his sentence on the ground that the Court erroneously refused to reduce his offense level under Section 3E1.1 for his acceptance of responsibility for his criminal conduct. *See* Pet'r's Mem. at 9. Because this claim was raised on direct appeal and deemed meritless, *see United States v. Tineo,* No. 89 Cr. 1017, slip. op. at 2–3 (2d Cir. Oct. 16, 1992), Petitioner cannot relitigate this claim in his present Section 2255 petition. Accordingly, the Court refuses to consider this thoroughly litigated claim.

### II. *Newly Asserted Claims*

A district court may dismiss a successive Section 2255 petition "if the judge

**5.** Section 2255 requires a prompt hearing on the issues raised in the petition unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Rule 4(b) of the Rules Governing Section 2255 Proceedings provides, in pertinent part, that: "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified." Rules Governing § 2255 Proc. U.S. Dist. Cts. 4(b). Therefore, a district court may dismiss a Section 2255 motion without a hearing upon its conclusion that, based on the records, no relief is warranted. For the reasons discussed below, the Court finds that Petitioner's claims do not warrant a hearing.

finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." Rules Governing § 2255 Proc. U.S. Dist. Cts. 9(b). To avoid dismissal for an abuse of writ, a petitioner must show "cause" for his failure to bring the claim in a prior Section 2255 petition and "prejudice" from the asserted ground. *McCleskey v. Zant,* 499 U.S. 467, 494–95, 111 S.Ct. 1454, 1470–71, 113 L.Ed.2d 517 (1991); *United States v. Pipitone,* 67 F.3d 34, 38 (2d Cir. 1995). If a petitioner cannot show "cause," the failure to raise the claim in an earlier petition may nonetheless be excused if he can show that a "fundamental miscarriage of justice" would result. *McCleskey,* 499 U.S. at 494–95, 111 S.Ct. at 1470.

The Supreme Court defines "cause" as "something external to the petitioner, something that cannot be fairly attributed to him." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel." *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470 (citation omitted); *see United States v. Helmsley,* 985 F.2d 1202, 1206 (2d Cir.1993) (holding that newly discovered evidence comprises "cause"). Ignorance of the law or inadvertence does not constitute "cause." *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2647–48, 91 L.Ed.2d 397 (1986). The "cause" requirement is "based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." *McCleskey,* 499 U.S. at 496, 111 S.Ct. at 1472.

To establish "prejudice," a petitioner must demonstrate "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Femia v. United States,* 47 F.3d 519, 524 (2d Cir.1995) (citation omitted). A fundamental miscarriage of justice occurs in those "extraordinary circumstances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470. To meet this narrow exception, the petitioner must establish constitutional error *and* present a colorable claim of factual innocence. *Schlup v. Delo,* 513 U.S. 298, 326–28, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995).[6]

Further, in Section 2255 proceedings, petitioners must show both a violation of their constitutional rights and "substantial prejudice" or a "fundamental miscarriage of justice." *Ciak v. United States,* 59 F.3d 296, 301 (2d Cir.1995) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 637–39, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993)); *United States v. Berger,* 826 F.Supp. 100, 102 (S.D.N.Y. 1993) (holding that to assert claim under Section 2255, error must be fundamental and result in complete miscarriage of justice). As held in *Ciak,* "because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules [in order to] make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." 59 F.3d at 301 (citing *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)).

### A. *Rule 11 Violations*

Petitioner maintains that his guilty plea must be vacated because the Court did not: (1) recite the "essential elements" of the conspiracy charge in Count I at the plea allocution in violation of Rule 11(c)(1) and (2) ensure that a factual basis existed for his guilty plea pursuant to Rule 11(f). Pet'r's Mem. at 16.

---

**6.** If the Court determines as a matter of law that a petitioner cannot satisfy the cause and prejudice test, the Court need not grant an evidentiary hearing on those issues. *See McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470.

### 1. *Procedural Issues*

As a threshold matter, Petitioner must show "cause" and "prejudice" to overcome the Government's pleading of an abuse of writ. Petitioner attributes his failure to raise the present claims in his first Section 2255 petition to: (1) his limited ability to speak English; (2) the absence of trained paralegals in federal prisons; and (3) the insufficient condition of "prison law libraries." *See* Pet'r's Aff. in Resp. to November 19, 1996 Order at 1–2 ("Pet'r's Resp. Aff.").[7]

■ With regard to Petitioner's claim that he "speaks little or no [E]nglish," Petitioner's language skills are not "external" to his defense within the meaning of Coleman and, therefore, cannot constitute "cause." *See Hull v. Freeman*, 991 F.2d 86, 91 (3d Cir. 1993) (finding that *pro se* prisoner's illiteracy and mental retardation are not factors "external" to defense and thus are insufficient to demonstrate cause); *Roccisano v. United States*, 936 F.Supp. 96, 99 (S.D.N.Y.1996) (rejecting petitioner's argument that his limited English skills constitute external source under cause analysis).[8]

■ Petitioner's contention that the absence of "trained paralegals" in federal prisons provides "cause" also fails. A prison is not required to provide assistance from "persons with legal training," but may do so as an alternative to an adequate law library. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Thus, Petitioner's allegation about the absence of trained paralegals in federal prisons is not "determinative of his [assertion of cause], but merely focuses the Court's inquiry on the quality of the library itself." *Roccisano*, 936 F.Supp. at 101. In that regard, Petitioner's affidavit merely asserts that "the status of the prison law libraries clearly does not meet the requirements of *Bounds v. Smith.*" Pet'r's Resp. Aff. at 1. Such *general* and *conclusory* allegations fail to demonstrate that the condition of the F.C.I. Allenwood library hindered the preparation of his first Section 2255 petition. *See Lewis v. Casey*, —— U.S. ——, ——, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996) (holding that because Bounds did not create an "abstract, free-standing right" to a law library, an inmate cannot merely assert that his prison's law library is "sub-par in some theoretical sense," but must demonstrate that the alleged "shortcomings" in the library "hindered his efforts to pursue a legal claim."); *Roccisano*, 936 F.Supp. at 100 (finding no "cause" for general allegations that prisoner's law library was insufficient).[9] Accordingly, the Court finds Petitioner's allegations concerning the adequacy of the prison law libraries insufficient to support a finding of cause.

■ Furthermore, Petitioner has not demonstrated that his case falls into the narrow "fundamental miscarriage of justice" exception. Petitioner has, to date, notwithstanding his testimony, pleadings, affidavits, appeal and two Section 2255 petitions, *never* asserted his innocence. *See, e.g., McCleskey*, 499 U.S. at 502, 111 S.Ct. at 1474–75 (rejecting "miscarriage of justice" claim because petitioner failed to demonstrate that alleged violation caused conviction of innocent per-

---

7. In a misguided attempt to show "cause," Petitioner offers allegedly "new evidence" from a fellow inmate, Jose Grullon, who claims that Alers and Fermin told him that they "g[ave] DEA Jesus Tineo ... to get a substantial sentence reduction." *See* Pet'r's Resp. Aff. at 3. The Court declines to address this "new evidence," as it is wholly unrelated to the claims raised in the instant petition.

8. The Court also finds that this claim lacks sufficient specificity or merit to require further development at an evidentiary hearing. *See United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987) ("Airy generalities, conclusory assertions and hearsay statements will not suffice [to sustain a habeas petition] because none of these would be admissible evidence at a hearing."); *Roccisano*, 936 F.Supp. at 100 (deeming petitioner's argument concerning his language barrier insufficiently specific or meritorious to warrant hearing).

9. Petitioner also notes that *at his current facility*, F.C.I. Schuylkill, "more than one thousand inmates are required to use the library during the hours of 6:30 to 8:30 p.m. while there is seating for only 10 inmates and very limited material with 5 typewriters." Pet'r's Resp. Aff. at 1. The condition of the law library at F.C.I. Schuylkill is irrelevant to the determination of whether the law library at F.C.I. Allenwood, where he was incarcerated through the filing of his first Section 2255 petition, was inadequate.

son). Nothing at the plea colloquy or sentencing hearing suggests that Petitioner was innocent of the crimes charged in the Indictment. To the contrary, Petitioner has repeatedly admitted that he committed the crimes of conspiracy to distribute crack and possession with intent to distribute crack. *See* Plea Tr. at 8–12; Pet'r's Mem. at 9, 12 (explaining that he has repeatedly and truthfully admitted his crimes, *e.g.*, his "signed written statement [to the probation officer] admitting his guilt and accepting responsibility for his conduct."). Thus, Petitioner has not shown that the denial of his writ would result in a miscarriage of justice.

Even if the Court were to bypass the "cause" requirement, Petitioner's Rule 11 claims would fail on the merits.

### 2. Standard of Review for Rule 11 Claims

■■■ A defendant may not collaterally attack a guilty plea under Rule 11 [10] where "all that is shown is a failure to comply with the formal requirements of the Rule." *United States v. Timmreck*, 441 U.S. 780, 785, 99 S.Ct. 2085, 2088, 60 L.Ed.2d 634 (1979). It is the technical requirements of Rule 11, "not due process, that require federal courts to conduct a factual inquiry before accepting a guilty plea." *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir.1984). The Constitution only requires that the plea be voluntary and intelligent. *Tsang v. United States*, 749 F.Supp. 72, 77 (S.D.N.Y.1990). Thus, to obtain collateral relief, a defendant must demonstrate that his plea was infected with a fundamental error "which inherently result[ed] in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Timmreck*, 441 U.S. at 783, 99 S.Ct. at 2087 (citation omitted). A defendant must also allege and produce credible evidence of "actual prejudice.", *Weissman v. United States*, 599 F.Supp. 1366, 1368 (S.D.N.Y.1984), *aff'd*, 767 F.2d 909 (2d Cir. 1985). Such prejudice would be established if, in fact, the defendant "did not understand the consequences of his plea, or that, if he had been properly advised, he would not

have pled guilty." *Lucas v. United States*, 963 F.2d 8, 12 (2d Cir.1992).

■■■ In assessing the fairness of the plea proceeding, the court "is not limited to the plea allocution itself, but may consider the entire record in order to determine whether a miscarriage of justice has occurred." *Tsang*, 749 F.Supp. at 77. Where, as here, the record as a whole illustrates that the defendant understood the crimes to which he pled guilty, collateral relief is inappropriate if based upon technical Rule 11 violations. *See id.* at 78 (refusing to grant collateral relief for court's failure to explain enterprise element of racketeering charge at plea allocution because defendant's description of his tenure and role in gang "[were] themselves proof that he grasped full well the enterprise element of the charges against him."); *Weissman*, 599 F.Supp. at 1377 (denying collateral relief for court's failure to read entire indictment at plea allocution where defendant easily described fraudulent scheme and had discussed charges with counsel, and modus operandi of conspiracy was "perfectly simple"); *Concepcion v. United States*, 568 F.Supp. 766, 771 (S.D.N.Y.1982) (rejecting collateral attack of guilty plea for absence of factual basis for plea because petitioner did not contest guilt and plea allocution comprised "unambiguous admission[ ] from the petitioner" to crimes charged).

■■■ Although the Court did not recite the elements of the conspiracy charge at the plea allocution, the Court finds that the omission did not result in a "complete miscarriage of justice" or a proceeding "inconsistent with the rudimentary demands of fair procedure" justifying collateral relief. *See Timmreck*, 441 U.S. at 784, 99 S.Ct. at 2087. Petitioner has never claimed that he is actually innocent of the conspiracy charge. *See, e.g., Tsang*, 749 F.Supp. at 77. To the contrary, Petitioner admits in his submission that he has "[r]epeatedly ... own[ed] up to the essentials of the committed offense[s of] count one (1) and

---

**10.** Rule 11 requires, among other things, that the court "address the defendant personally ... and inform the defendant of, and determine that the defendant understands ... the nature of the

charge to which the plea is offered," Fed. R. Cr. P. 11(c)(1), and satisfy itself that "there is a factual basis for the plea," Fed. R. Cr. P. 11(f).

two (2) of the indictment." Pet'r's Mem. at 12.[11]

Moreover, the record in this case amply demonstrates that Petitioner understood the nature of the drug-conspiracy charge to which he pled guilty. Petitioner's plea allocution contained all of the essential elements of conspiracy.[12] Petitioner described the agreement to sell the 211 grams of crack cocaine by stating that: (1) he and Alers were "selling drugs together as a business," (2) Alers asked him to "sell" the 211 grams of crack to his friends (the policeman and undercover agent), (3) he agreed to "do the deal" because "we were going to earn $200" each, (4) "we went and sold the drugs," and (5) "the drug[s] belonged to us [Petitioner and Alers]." See Plea Tr. at 8–10. Petitioner participated in the conspiracy by negotiating the drug deal and giving the 211 grams of crack to Alers with the knowledge that Alers would consummate the drug deal. Id. In addition, the modus operandi of the drug-conspiracy was simple and easily described by Petitioner. Id. (admitting that he

went with Alers to meet the policeman, told the undercover agent to show him the money, talked to the undercover agent "about the transaction, how much the drugs cost and how many ounces the undercover wanted," and gave the "crack" cocaine to Alers to complete the deal while he stayed at home); see Weissman, 599 F.Supp. at 1377. Finally, Petitioner at no time in the plea indicated any uncertainty about the nature of the conspiracy charge. Although the Court specifically advised Petitioner to ask questions that occurred to him, he never asked for clarification and affirmed that counsel had answered his questions. See Plea Tr. at 15. These factors convince the Court that Petitioner understood the drug-conspiracy charge so as to render an intelligent, voluntary and knowing plea. See, e.g., Tsang, 749 F.Supp. at 78.[13]

In light of Petitioner's failure to claim innocence and his voluntary and knowing plea, Petitioner cannot demonstrate that he was prejudiced by any alleged inadequacy in the allocution.[14] In short, the Court is convinced

11. Petitioner cites McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), and Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), for the proposition that a court must recite every element of a crime to a defendant before accepting his guilty plea. Petitioner misstates the holdings of these cases. See McCarthy, 394 U.S. at 464–67, 89 S.Ct. at 1169–71 (vacating defendant's guilty plea because district judge failed to personally inquire whether petitioner understood nature of the charge and consequences of his plea); Henderson, 426 U.S. at 644–47, 96 S.Ct. at 2257–59 (finding defendant's guilty plea involuntary because "trial judge found as a fact that the element of intent [for the murder charge] was not explained to defendant" and defendant made no statement on the record implying that he had such intent). The record reflects that the central concerns of these cases, namely the defendant's comprehension of the accusations and awareness of the potential consequences of the plea, were satisfied in this case.

12. The essential elements of the drug-conspiracy charge are that: (1) an agreement to distribute "crack" cocaine existed and (2) Petitioner knew of the scheme to distribute "crack" cocaine and knowingly joined and participated in it. See Matista v. United States, 885 F.Supp. 634, 641 (S.D.N.Y.1995) (citing United States v. Atehortva, 17 F.3d 546, 550 (2d Cir.1994)).

13. Petitioner seemingly argues that he would not have pled guilty had he known that the crime of

conspiracy is "an agreement to commit a crime other than the sale [of drugs] itself." Pet'r's Mem. at 17 (emphasis added). Petitioner explains that, because the conspiracy was nothing more than "an isolated sale" in which he "played no greater role than any other," his conduct was "more an admission of aiding and abetting than an admission of conspiracy." Id. Petitioner is wrong. It is precisely the agreement between Petitioner and his co-conspirators to sell "crack" that constituted the crime of conspiracy charged in Count I of the Indictment. See United States v. Nusraty, 867 F.2d 759, 763 (2d Cir.1989); Walker v. United States, No. 92 Civ. 2253, 1992 WL 225580, at *3 (S.D.N.Y. Sept.2, 1992). In a supplemental pleading, Petitioner alternatively asserts that he would not have pled guilty to conspiracy "had he been aware that proof of [an] on going criminal enterprise was both required to be alleged in the indictment and proved upon a trial." Pet'r's Aff. at 2. Contrary to Petitioner's assertions, an ongoing enterprise is not an element of conspiracy. Petitioner's erroneous legal arguments strike the Court as "last minute, post-hoc attempt[s] to create misunderstanding[s] where none truly exist," United States v. Stevens, 19 F.3d 93, 96 (2d Cir.1994).

14. In his submission, Petitioner offers no evidence to support his claim of "actual prejudice," but notes that he intends to offer "some evidence … upon the hearing." Pet'r's Aff. at 1. Because the record provides no support for Petitioner's claim of a "miscarriage of justice" or a

that the purpose of Rule 11, which "at bottom ... is meant to ensure that the defendant is aware of the consequences of his plea," *United States v. Showerman*, 68 F.3d 1524, 1527 (2d Cir.1995), was fulfilled in this case.[15] Accordingly, no collateral relief is warranted for the alleged Rule 11(c)(1) violation.

For the same reasons, a review of the record demonstrates that the Court had sufficient probative information to satisfy it, in compliance with Rule 11(f), that "there [wa]s a factual basis for the guilty plea." Fed. R. Cr. P. 11(f); *Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (factual basis for a guilty plea can be established "by having the accused describe the conduct that gave rise to the charge"); *see, e.g., United States v. Stevens*, 19 F.3d 93, 95 (2d Cir.1994) (petitioner provided factual basis for conspiracy charge by stating that "[m]e and my co-conspirators sold crack in apartment 3C").[16] The Court finds no "fundamental defect" resulting in the "miscarriage of justice" to warrant collateral relief for Petitioner's meritless Rule 11(f) allegation.

## B. *Ineffective Assistance of Counsel*

Petitioner argues that counsel provided ineffective assistance by failing to: (1) object to the Court's alleged Rule 11 violations at the plea allocution ("Ground I"); (2) assert "necessary objections" to the PSI ("Ground II"); and (3) investigate an abandonment defense to the drug-conspiracy charge ("Ground III"). *See* Pet'r's Mem. at 14, 30.

proceeding inconsistent with "fair procedure" and because Petitioner has offered no evidence to support his alleged lack of understanding, an evidentiary hearing is not warranted. *See Tsang*, 749 F.Supp. at 77; *Weissman*, 599 F.Supp. at 1380. Petitioner's present protestations of misunderstanding are belied by his contemporaneous statements and the record as a whole.

**15.** The Court notes that "insofar as petitioner ... is arguing that the court had a duty to explain the charges to him, that is not so." *Conhaim v. United States*, No. 96 Civ. 547, 1996 WL 527346, at *5 (N.D.N.Y. Sept.9, 1996). The Court was not required "to deliver to the defendant the equivalent of a jury charge." *United States v. Saft*, 558 F.2d 1073, 1078–79 (2d Cir.1977).

## 1. *Procedural Threshold*

### a. *Claim raised in a prior Section 2255 petition*

The Government urges the Court not to consider Petitioner's ineffective assistance claim because it "has already [been] dismissed in an earlier Section 2255 petition raising the same issue." Gov't Mem. at 9. It is well-established that a movant "cannot raise as a basis for vacating [a] sentence a ground raised in a previous § 2255 motion that was decided on the merits." *Douglas v. United States*, 13 F.3d 43, 46 (2d Cir.1993). Courts, however, treat substantially different ineffective assistance claims as new "grounds" for relief. *See Riascos–Prado v. United States*, 66 F.3d 30, 35 (2d Cir.1995) (deeming ineffective assistance of counsel claim new "ground" even though defendant had raised other ineffective assistance of counsel claims on direct appeal). Any doubt as to whether the grounds submitted in a subsequent petition are different or the same "should be resolved in favor of the applicant." *Sanders v. United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963).

In his first petition, Petitioner claimed that his counsel provided ineffective assistance by misrepresenting his maximum possible sentence ("First Ineffectiveness Claim"). *See* 1993 Pet. at 4. Although Petitioner again asserts ineffective assistance, the Court finds the three new grounds substantially different from the First Ineffectiveness Claim dismissed by the Court in the February 1994 Order.[17] The Court therefore

**16.** To the extent that Petitioner challenges the factual basis of his plea to the possession charge in Count II, such allegation is also refuted by the record. Petitioner acknowledged at the plea allocution that: (1) he "gave" the crack to Alers and that the "drugs belonged to us [Petitioner and Alers]"; (2) "we [Petitioner and Alers] went and sold the drugs"; and (3) it was against the law to possess and sell crack. *See* Plea Tr. at 9–10.

**17.** Petitioner also urges the Court to reconsider the First Ineffectiveness Claim because, he argues, it was never decided on the merits. Pet'r's Mem. at 6. Contrary to Petitioner's assertions, the Court addressed the merits of the First Ineffectiveness Claim and found it "conclusively refuted by the record." February 1994 Order at 2–

refuses to bar the instant ineffectiveness claim on the basis that it has been previously denied on the merits.

### b. *Billy-Eko rule*

█ In *Billy–Eko v. United States,* 8 F.3d 111, 115 (2d Cir.1993), the Second Circuit deemed the "cause" and "prejudice" procedural bar inapplicable to ineffectiveness claims except where: (1) the petitioner had new appellate counsel, and (2) the claim is based solely on the trial record. Under that analysis, Grounds I and II are procedurally barred.

As to the first factor, there is no question that Petitioner had new counsel, Mark Freyberg, on direct appeal. Regarding the second factor, Grounds I and II are based entirely on the record. Counsel for Petitioner's direct appeal would not have had to rely on anything outside the record to support ineffective assistance claims based on trial counsel's failure to challenge alleged Rule 11 violations or to object to Petitioner's PSI. Both of these grounds merely apply recognized legal concepts to the facts developed at the plea allocution and sentencing hearing. Moreover, neither ground alleges that information exists that came to light after Petitioner's conviction or that was not otherwise put into the record to which appellate counsel would have needed access to substantiate the ineffective assistance arguments. *See Douglas,* 13 F.3d at 47. Because Petitioner offers no excuse for failing to bring these claims on his direct appeal, Grounds I and II are procedurally barred.

█ Furthermore, Petitioner offers no meritorious excuse for his failure to raise all three grounds for ineffective assistance in his first Section 2255 petition. Under *Billy–Eko,* a petitioner is required to raise ineffectiveness claims "at the earliest feasible opportunity." 8 F.3d at 115; *Stewart v. United States,* No. 95 Civ. 9435, 1996 WL 583336, at *1 (S.D.N.Y. Oct.9, 1996). Thus, Petitioner, having failed without cause to raise these grounds in his first Section 2255 petition, is

3. Accordingly, the Court declines to reconsider a claim that it previously rejected on the merits.

barred from raising them in the instant petition.

Even if the Court were to consider the merits of the three grounds raised in the ineffective assistance claim, the Court finds them unavailing.

### 2. *Merits of Petitioner's Ineffective Assistance of Counsel Claim*

To prevail on his claim for ineffective assistance of counsel, a petitioner must show (1) that counsel's performance "fell below an objective standard of reasonableness," *and* (2) that the deficient performance prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see United States v. Hansel,* 70 F.3d 6, 8 (2d Cir.1995). Under the first prong of the *Strickland* test, the reviewing court must determine whether the attorney's performance was reasonable "under prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. To satisfy prong two of the *Strickland* test, a petitioner must prove that, but for counsel's unprofessional errors, a reasonable probability exists that the outcome of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. To establish counsel's ineffectiveness, both prongs of the *Strickland* test must be satisfied. A failure to satisfy one prong relieves the court of the necessity for satisfying the other prong. *Strouse v. Leonardo,* 928 F.2d 548, 556 (2d Cir.1991).

█ In the context of guilty pleas, a petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). In this regard, the fundamental question is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); *United States v. Berger,* 826 F.Supp. 100, 104 (S.D.N.Y.1993).

*See Douglas,* 13 F.3d at 46.

### a. *Rule 11 claims*

Petitioner alleges that trial counsel provided ineffective assistance because he "did not recognize the obvious [Rule 11(c)(1) and 11(f) ] violations." *See* Pet'r's Mem. at 8, 30. The Court will address counsel's assistance with regard to each alleged Rule 11 violation in turn.

#### (1) *Rule 11(c)(1)*

■ Petitioner contends that trial counsel erred by not objecting to the Court's failure to recite "every essential element" of the conspiracy charge at the plea allocution. *See* Pet'r's Mem. at 14, 30. Petitioner's argument is unpersuasive. The record clearly reflects that Petitioner understood the drug-conspiracy charge so as to render an intelligent, voluntary and knowing plea. *See supra* at pp. 256–257. In support of this claim, Petitioner offers nothing but erroneous legal arguments that do not illustrate his misunderstanding of the conspiracy charge. *See supra* at p. 256 n. 13. Because Petitioner has failed to illustrate by a reasonable probability that, but for counsel's failure to object to the alleged Rule 11(c)(1) violation, he would not have pled guilty, this ground does not provide a basis for finding ineffective assistance of counsel.

#### (2) *Rule 11(f)*

■ Petitioner contends that his counsel erred by not objecting to the Court's failure to ensure that a factual basis for his plea existed. *See* Pet'r's Mem. at 30. As the Court held above, Petitioner's testimony established a factual basis for the crimes to which he pled guilty. *See supra* at pp. 256–257. Consequently, counsel's failure to raise a meritless legal argument cannot constitute ineffective assistance of counsel. *See Baumann v. United States*, 692 F.2d 565, 572 (9th Cir.1982). Thus, the Court rejects Petitioner's claim that counsel provided ineffective assistance for failing to object to the alleged Rule 11(f) violation.

### b. *Counsel's failure to object to the presentence investigation report*

■ Petitioner contends that his counsel failed to assert "necessary objections" to the PSI. *See* Pet'r's Mem. at 30. Petitioner, however, fails to specify (1) the exact objections counsel failed to make and (2) whether those objections would have altered the Court's determination of Petitioner's sentence. Such *vague* and *conclusory* allegations preclude the Court from identifying any alleged errors which might have prejudiced Petitioner. *See, e.g., United States v. Glass*, Nos. 88 Civ. 3756, 87 Cr. 136, 1988 WL 105347, at *3 (N.D.Ill. Sept.30, 1988).

■ Moreover, the record makes clear that Petitioner's trial counsel did, in fact, raise articulate objections to the contested matters in his PSI. Prior to sentencing, defense counsel challenged the probation officer's recommendation to enhance Petitioner's sentence for his role in the offense and the presence of firearms. *See* Letter from Cabrera to the Court, dated Sept. 14, 1990, at 1. Defense counsel also objected to the PSI's offense level recommendation, urging the Court to reduce it to 32. *Id.* At the sentencing hearing, trial counsel again objected to the probation officer's recommendations to enhance Petitioner's sentence for his role in the offense and the presence of firearms. *See* Sentencing Tr. at 2–3, 99. Because Petitioner has neither alleged nor shown that "but for" counsel's errors, a reasonable probability exists that the outcome of his sentencing would have been different, petitioner has failed to satisfy the *Strickland* test. *See Macon v. United States*, 930 F.Supp. 119, 123 (S.D.N.Y.1996) (finding no ineffective assistance for counsel's failure to object to PSI because prisoner never claimed that outcome of sentencing would have been different had counsel challenged PSI); *Bilzerian v. United States*, Nos. 95 Civ. 1215, 88 Cr. 962, 1996 WL 524340, at *9 (S.D.N.Y. Sept. 13, 1996) (rejecting ineffective assistance claim based on counsel's failure to object to PSI where prisoner failed to offer evidence of PSI's prejudicial effect on his sentence). Accordingly, the Court rejects Petitioner's claim that he received ineffective assistance for counsel's alleged failure to object to the PSI.

### c. *Counsel's alleged failure to investigate the defense of abandonment*

■ As a final basis for his claim of ineffective counsel, Petitioner alleges that

counsel failed to investigate an "abandonment defense" to his conspiracy charge. Pet'r's Mem. at 30.[18] In guilty plea cases, where counsel's alleged error involves a failure to advise the defendant of a potential defense to the crime charged, a finding of "prejudice" hinges upon whether the defense likely would have succeeded at trial. *Hill*, 474 U.S. at 59, 106 S.Ct. at 370–71; *accord Mitchell v. Scully*, 746 F.2d 951, 954–55 (2d Cir.1984) (rejecting ineffective assistance of counsel claim where attorney failed to inform defendant of available defense because defense had "exceedingly little likelihood" of success and would have had greater chance of exposing defendant to more severe punishment than just pleading guilty). Thus, the Court must determine whether an abandonment defense would have succeeded at trial.

Abandonment is a defense to conspiracy when a defendant takes "affirmative steps to terminate or abandon his participation in the conspiracy." *United States v. LaMorte*, 950 F.2d 80, 83 (2d Cir.1991); *United States v. Borelli*, 336 F.2d 376, 388 (2d Cir.1964). The only evidence Petitioner offers in support of this claim is his plea colloquy statement that: "[t]hen I told him [Alers] that I wasn't going to do the deal, that I didn't like the deal because I thought [the buyer] could be a policeman. Then I stayed home and [Alers] went and did it with Miguel." *See* Plea Tr. at 8–9 (emphasis added). However, immediately following this statement, Petitioner admitted that he "gave [Alers] the drug" to consummate the deal. *See* Plea Tr. at 9. Petitioner's admissions indicate that he did not take "affirmative steps" to terminate the conspiracy, but instead facilitated it. In light of the fact that Petitioner never withdrew from the conspiracy, the Court finds it inconceivable that Petitioner had any chance of success on a defense of abandonment, or that, if he had pursued it, he would have been acquitted. Moreover, nowhere in his habeas petition does Petitioner allege that, had counsel informed him of the abandon-

ment defense, he would have pleaded not guilty and insisted on going to trial. Accordingly, Ground III fails to satisfy the "prejudice" requirement of the *Strickland* test. Trial counsel's decision not to pursue the abandonment defense, therefore, cannot constitute a basis for a claim of ineffective assistance of counsel.

## C. Sentencing Errors

Plaintiff alleges that the Court erred by: (1) failing to ensure that Petitioner had read and discussed the PSI with his attorney prior to sentencing in violation of Rule 32(a)(1)(A), (2) enhancing Petitioner's offense level, pursuant to Section 3B1.1(c), for his leadership role in the offense, and (3) failing to depart downward from the Sentencing Guidelines, pursuant to Section 5K2.0, given Petitioner's alien status (collectively the "Sentencing Claims"). *See* Pet'r's Mem. at 5–6.

### 1. Procedural Issues

■ As an initial matter, Petitioner's Sentencing Claims are not cognizable in a Section 2255 petition. The Second Circuit has held that errors in sentencing procedure are cognizable only if a petitioner "establish[es] that the violation constituted a constitutional or jurisdictional error or by showing that the error resulted in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure." *Femia v. United States*, 47 F.3d 519, 525 (2d Cir.1995) (citations omitted). Petitioner has alleged no constitutional or jurisdictional errors as to his sentencing, nor is there any evidence of a miscarriage of justice or a proceeding inconsistent with the rudimentary demands of fair procedure. On this basis alone, the Court can deny Petitioner's Sentencing Claims, as each pertains to alleged errors in the Court's sentencing procedure.

The question of cognizability aside, Petitioner must show both "cause" and "prejudice" to justify a review of these claims and

---

18. In a supplemental pleading, Petitioner alleges that counsel should have investigated the defenses of entrapment and "unconscionable police mis-conduct." Pet'r's Amended Complaint at 2. The former claim is baseless because the record is bereft of any evidence, and Petitioner offers

none, that the Government either directly or indirectly induced Petitioner to commit a crime. *See United States v. Pilarinos*, 864 F.2d 253, 255–56 (2d Cir.1988). The latter claim must be rejected as no such defense exists.

overcome the Government's pleading of an abuse of the writ. Petitioner has failed to show cause. *See supra* at pp. 253–255. Even if Petitioner could show cause, Petitioner cannot establish the "prejudice" necessary to sustain a Section 2255 petition because his claims lack merit.

### 2. *Merits of Sentencing Claims*

#### a. *Rule 32 claim*

 Petitioner claims that the Court violated Rule 32(a)(1)(A) [19] by failing to ensure that Petitioner had read and discussed the PSI with his attorney. The Second Circuit has held that Rule 32(a)(1)(A) does *not* require the sentencing court to personally question the defendant about whether he read the PSI, provided the court can reasonably infer that the defendant has had an opportunity to review the report. *See, e.g., United States v. Cortez,* 841 F.2d 456, 460–61 (2d Cir.1988) (holding that, although direct questioning about relevant aspects of Rule 32(a) is the better practice, court is not required to personally question defendant if it can reasonably infer defendant had opportunity to review PSI)

 At the sentencing hearing, the Court asked Petitioner's counsel whether he had discussed the probation report with his client, and Petitioner's attorney answered in the affirmative. *See* Sentencing Tr. at 98. The Court reasonably inferred from counsel's response that Petitioner had reviewed and discussed the contents of the probation report with his attorney. Because Petitioner has failed to demonstrate error, much less one that resulted in a "complete miscarriage of justice," Petitioner's Rule 32 argument is unavailing.

#### b. *Erroneous enhancement for leadership role claim*

Petitioner claims that the Court erroneously enhanced his sentence for his leadership role in the offense under Section 3B1.1(c) on the basis of unreliable and uncorroborated hearsay evidence. *See* Pet'r's Mem. at 21. Petitioner challenges the sentence increase on two grounds. First, Petitioner contends that he was denied due process and his right to confront witnesses because the Court relied on "layered" hearsay testimony. *Id.* at 21–22. Second, Petitioner challenges the trustworthiness of the hearsay testimony at the sentencing hearing. *Id.* at 23–25. The Court finds no merit in these claims.

 With respect to Petitioner's first contention, it is clear that the Due Process Clause is implicated at sentencing and that a defendant has a right to challenge the procedure leading to the imposition of his sentence. *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393 (1977). As a general rule, however, sentencing courts may consider information, "largely unlimited" as to kind or source, that would be inadmissible at trial. *Roberts v. United States,* 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980). For example, a sentencing judge may rely on hearsay statements or information from out-of-court witnesses whom the defendant could neither confront nor cross-examine. *See United States v. Carmona,* 873 F.2d 569, 574 (2d Cir.1989) (citing *Williams v. People of New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). Hearsay testimony with a "sufficient indicia of reliability" may be an appropriate basis for a sentencing determination. U.S.S.G. § 6A1.3(a); [20] *see, e.g., Carmona,* 873 F.2d at 574 (deeming interlocking and meshing hearsay evidence sufficiently reliable to support sentence enhancement). A sentencing court's consideration of hearsay evidence does not violate a defendant's due process rights, *see Carmona,* 873 F.2d at 574, or the Confrontation Clause of the Sixth Amendment, *United States v. Streich,* 987 F.2d 104, 107 (2d Cir.1993).

---

**19.** Rule 32(a)(1)(A) provides, in pertinent part: "[b]efore imposing sentence the court shall (A) determine that the defendant and the defendant's counsel have had an opportunity to read and discuss the presentence investigation report." Fed. R. Crim P. 32(a)(1)(A).

**20.** Section 6A1.3(a) of the United States Sentencing Guidelines provides, in pertinent part: "In resolving any reasonable dispute ... [at] sentencing ...., the court may consider relevant information without regard to its admissibility under the rules of evidence, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).

■ Petitioner argues that the Court considered Agent Serniak's "double hearsay" testimony in violation of his due process rights and the Confrontation Clause. *See* Pet'r's Mem. at 21. At the sentencing hearing, Agent Serniak testified as to what Alers told the undercover agent during the commission of the drug deal. *See* Sentencing Tr. at 48, 74. This statement, however, does not constitute "hearsay upon hearsay." The double hearsay declarant was Alers, a co-conspirator named in the Indictment and identified by Petitioner as having sold the "crack" in question with him. *See* Plea Tr. at 8. As such, even if the Federal Rules of Evidence were to apply at sentencing, Alers would be deemed a co-conspirator whose statements fit an exception to the rule against hearsay. *See* Fed.R.Evid. 801(d)(2)(E) (statements by co-conspirator are admissible if made during course of and in furtherance of conspiracy). Because sentencing courts may consider hearsay testimony notwithstanding the fact that the defendant could neither confront nor cross-examine the witnesses, Petitioner's due process and Confrontation Clause claims fail.[21]

■ Petitioner next challenges the trustworthiness of the evidence presented at the sentencing hearing. The Court enhanced Petitioner's sentence for his leadership role in the offense based on Agent Serniak's hearsay testimony and Petitioner's admissions in the plea allocution. *See* Sentencing Tr. at 90–92.[22] The evidence presented at the hearing demonstrated that: (1) Alers and Fermin sold drugs for Petitioner; (2) Alers referred to Petitioner as "the man" needed to complete the drug transaction; (3) Petitioner conducted the drug-sale negotiations with the undercover agent; (4) Petitioner demanded to see the money held by the undercover agent before leaving with Alers to get the crack cocaine; and (5) the drug deal transpired after Petitioner saw the money. *See id.* at 24, 86–87, 90–92.

At the sentencing hearing, Agent Serniak recounted the statements of three different individuals: undercover DEA Agent Willie Gray ("Agent Gray"), Alers and Fermin (both co-conspirators named in the Indictment). Agent Serniak testified that Agent Gray told him that Alers told him that he had to get "the man" to figure out the amount and price of the crack. *See id.* at 48, 74. Agent Gray then told Agent Serniak that Alers returned with Petitioner and that Petitioner "negotiated the amount and price [of the drugs] and ... asked [him] to see the money." *Id.* at 52. Agent Gray described how Petitioner then left with Alers, who returned minutes later with the crack cocaine. *Id.* at 52–53.

The hearsay statements of Alers and Fermin corroborated Agent Gray's hearsay testimony, identifying Petitioner as "the man" with Alers who negotiated the drug deal. *Id.* at 53–54. Alers also told Agent Serniak in his debriefing that he began working for Petitioner as a "low level crack dealer," but

---

**21.** Petitioner also argues that when "double hearsay" forms the basis of a sentence the court should apply a "more stringent" admissibility test in order to avoid violating the Confrontation Clause. *See* Pet'r's Mem. at 21 (citing *Romano v. Howarth*, 998 F.2d 101 (2d Cir.1993); *Big Apple BMW, Inc., v. BMW of North America, Inc.*, 974 F.2d 1358 (3d Cir.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993); *United States v. Kikumura*, 918 F.2d 1084 (3d Cir.1990)). Petitioner's argument fails for two reasons. First, Petitioner mischaracterizes Agent Serniak's testimony as to what Alers and Fermin told him as "double hearsay," when in fact *only one* layer of hearsay is involved. Second, the cases upon which Petitioner relies are not analogous. *Romano* and *Big Apple BMW* dealt with the indicia of reliability implicated when hearsay is admitted at civil trials. 998 F.2d at 108, 974 F.2d at 1372–74. Neither *Romano* nor *Big Apple BMW* ruled that a more stringent test is required to admit hearsay at sentencing. *Kikumura* is

also distinguishable. In *Kikumura*, the court assessed the admissibility of hearsay at sentencing under an intermediate standard due to the sentencing court's dramatic, 330-month departure from the applicable sentencing guideline range. 918 F.2d at 1103. The court made clear that when a sentencing court does not dramatically depart from the Guidelines, reliable hearsay is generally admissible. *Id.* Thus, the Court finds *Kikumura* inapplicable where, as here, there is no substantial departure from the Guidelines.

**22.** Petitioner contends that the Court impermissibly relied upon a transcript of a taped conversation between Alers and himself. *See* Pet'r's Mem. at 28–29. However, as the sentencing transcript minutes make clear, the Court neither relied on the transcript of the taped conversation nor the tape itself in its decision to enhance Petitioner's sentence for his leadership role in the offense.

that as time passed Petitioner paid him substantially more money for his assistance in running a drug operation out of an apartment. *Id.* at 57. Fermin related to Agent Serniak in his debriefing that he worked for Petitioner, steering "[crack] customers" to him. *Id.* at 61.

The uncontradicted testimony of the three hearsay declarants (Agent Gray, Alers and Fermin) meshed and singled out Petitioner as the "boss" of the drug conspiracy. The Court finds that the internal consistency of the three hearsay accounts lent substantial indicia of reliability to the testimony. *See e.g., United States v. Prescott,* 920 F.2d 139, 145 (2d Cir.1990) (finding hearsay testimony sufficiently reliable because numerous and independent accounts had "high degree of intercorrelation").[23] Moreover, Petitioner's own admissions in the plea allocution corroborated Agent Serniak's hearsay testimony, further bolstering its reliability. *See* Plea Tr. 8–9 (admitting that he told undercover agent to show *him* money, that he and Alers then went to apartment to get crack, and that he gave crack to Alers to consummate deal). The Court finds that there was sufficient corroboration to establish the reliability of Agent Serniak's hearsay testimony.[24] Accordingly, Petitioner's challenge to his sentence enhancement is meritless.

c. *Departure based on alien status claim*

█ Finally, Petitioner argues that, in light of his status as an alien, the Court erred by failing to depart downward from the range prescribed by the Guidelines. *See* Pet'r's Mem. at 34. Petitioner asserts that he is entitled to a downward departure pursuant to Section 5K2.0 because, as an alien,[25] he is not eligible for certain programs offered by the Bureau of Prisons (*e.g.,* incarceration in a half-way house). *See* Pet'r's Mem. at 34. Petitioner's claim is meritless.

The Second Circuit has recently held that a convicted defendant is not entitled to a downward departure based on the "mitigating circumstance" that he is a deportable alien if the only consequences of his alienage are harsher conditions of confinement, such as ineligibility for Bureau of Prisons programs. *See United States v. Restrepo,* 999 F.2d 640, 644–46 (2d Cir.) (refusing to recognize Bureau of Prisons' denial of reassignment to halfway house based on defendant's deportable alien status as appropriate basis for downward departure); *see also United States v. Gallo–Lopez,* 931 F.Supp. 146, 148–50 (S.D.N.Y.1996) (holding petitioner not entitled to a downward departure on the basis of his status as deportable alien).

Because Petitioner asserts a similar claim to the one raised by defendant in *Restrepo,* he is not entitled to a downward departure on the basis of his deportable alien status. Accordingly, the Court rejects Petitioner's claim for relief on this ground.

D. *All Other Section 2255 Claims*

Petitioner challenges the Indictment as "materially defective on its face as to deprive the court of lawful jurisdiction." Pet'r's Amended Complaint at 1. Specifically, Petitioner alleges that Count I of the Indictment is defective for its failure to name his co-conspirators. *Id.* at 2 (arguing that "the indictment claims that the co-conspir[a]tors are unknown to the grand jury—clearly something is amiss, and the resulting consequences has produced the greatest injustice that I have seen in my thirty years [i]nvolved

---

**23.** Petitioner contends that the Court incorrectly relied upon Agent Serniak's testimony after rejecting a portion of his testimony concerning the presence of firearms. *See* Pet'r's Mem. at 23. Petitioner's argument is meritless, as the Court simply disregarded Agent Serniak's testimony to the extent that he was unable to state exactly where Ricardo Alers had told him the guns were stashed. *See* Sentencing Tr. at 59–60. At no time did the Court impugn the credibility of Agent Serniak. The Court therefore did not abuse its discretion by considering Agent Serniak's hearsay testimony with regard to the sentence enhancement issue.

**24.** Agent Serniak's accounts and Petitioner's admissions also negate Petitioner's claim, *see* Pet'r's Mem. at 25, that the Government failed to prove his leadership role in the offense by a preponderance of the evidence as required by *United States v. Lee,* 818 F.2d 1052, 1056 (2d Cir.1987). *See e.g., United States v. Garcia,* 936 F.2d 648, 656 (2d Cir.1991) (finding ample evidence of defendant's leadership role under section 3B1.1 where defendant negotiated with informants and largely directed activity of other participants).

**25.** Petitioner fails to note that his drug conviction renders him a deportable alien under 8 U.S.C. 1251(a)(2)(B)(i).

in the profession."). Petitioner failed to raise these issues either on direct appeal or in his first petition. No cause having been shown, the Court declines to address whether Petitioner suffered actual prejudice resulting therefrom.[26]

The Court has reviewed Petitioner's remaining contentions and finds them wholly without merit.

## CONCLUSION

For all the foregoing reasons, Petitioner's motion to vacate, set aside or correct his sentence, pursuant to Section 2255, is denied. The Court also certifies, pursuant to 28 U.S.C. § 1915(e), that any appeal from this order would not be taken in good faith. Because the petition presents no question of substance for appellate review, no certificate of appealability will issue. 28 U.S.C. § 2253 (as amended); *Rodriquez v. Scully*, 905 F.2d 24 (2d Cir.1990) (per curiam).

It is So Ordered.

---

**26.** The Court notes that, contrary to Petitioner's assertions, the Indictment identifies both Alers and Fermin as co-conspirators.