**Vincenzo ROCCISANO, Petitioner,**

**v.**

**UNITED STATES of America, Respondent.**

95 Civ. 2215 (DAB).

United States District Court, S.D. New York.

July 25, 1996.

Cheryl J. Sturm, West Chester, PA, for Petitioner.

Mary Jo White, United States Attorney for the S.D. New York, New York City (Andrew

C. McCarthy, Assistant United States Attorney, of counsel), for Respondent.

### MEMORANDUM and ORDER

BATTS, District Judge.

Petitioner brings this second motion pursuant to 28 U.S.C. § 2255 seeking to challenge his sentence. Petitioner claims, through counsel, that the Government obtained his conviction and sentence in violation of the Fifth and Sixth Amendments to the Constitution, specifically alleging that (1) the Government improperly deprived him of the testimony of a witness in his defense, (2) the district court's incorrect assessments of drug weight, level of participation, and responsibility for the acts of his con-conspirators resulted in an unduly harsh sentence, and (3) counsel rendered ineffective assistance due to Government interference.

Respondent moves to dismiss the petition as an abuse of the writ. The Government argues that this second collateral attack on Petitioner's conviction and sentence should be dismissed because all of the facts and circumstances supporting his claims were known to him at the time of both his direct appeal and his first § 2255 motion. In addition, the Government argues that the petition is without merit.

Petitioner has filed a traverse opposing the Government's motion.

### I. BACKGROUND

On August 3, 1989, a jury convicted Petitioner Vincenzo Roccisano on all three counts in which he was charged. On Count One, the jury found that Petitioner and his co-conspirators intended to import in excess of one kilogram of heroin and export in excess of five kilograms of cocaine. On Count Two, the jury found that Petitioner and his co-conspirators had conspired to distribute some amount of heroin and cocaine domestically. On Count Three, the jury found that Petitioner and his co-conspirators had attempted to export five kilograms or more of cocaine. On March 9, 1990, the Honorable Robert J. Ward, U.S.D.J., sentenced Petitioner to concurrent terms of 235 months' imprisonment, to be followed by five years

supervised release. Petitioner's conviction and sentence were affirmed by the United States Court of Appeals for the Second Circuit on September 19, 1990. *United States v. Batista,* No. 90–1167 (2d Cir. Sept. 10, 1990).

Petitioner filed his first § 2255 petition *pro se* on December 31, 1991. *Roccisano v. United States,* No. 92 Civ. 0323 (RJW) (S.D.N.Y. filed Dec. 31, 1991). Petitioner there claimed that his three retained attorneys—one for trial, another for sentencing, and yet another for appeal—had collectively rendered him constitutionally ineffective assistance by: (1) preventing him from testifying at trial; (2) failing to present a defense; and (3) neglecting to cite Sentencing Guidelines § 1B1.3, Application Note 1, either at sentencing or on appeal. Petitioner claimed that the cited note from the Sentencing Guidelines would have resulted in a finding that the drug amounts dealt in by his confederates were not reasonably foreseeable by him. Judge Ward denied each of Petitioner's claims in a ten-page Memorandum Decision filed on July 9, 1992. Judge Ward applied the two-prong test mandated by *Strickland v. Washington,* 466 U.S. 668, 687–88, 693–94, 104 S.Ct. 2052, 2064–65, 2067–68, 80 L.Ed.2d 674 (1984), and found that Petitioner had not been provided ineffective assistance of counsel. Judge Ward found the other alleged failings both meritless and waived by failure to raise on direct appeal. *Roccisano v. United States,* No. 92 Civ. 0323 (RJW), 1992 WL 178582 (S.D.N.Y. July 9, 1992).

On appeal of denial of his first petition, Roccisano abandoned his claim of the failure of his counsel to present a defense, and only raised the sentencing issue. The Second Circuit affirmed Judge Ward's ruling. *Roccisano v. United States,* 992 F.2d 321 (2d Cir. 1993) (Summary Order).

### II. DISCUSSION

■ In *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), the Supreme Court set out the appropriate standard for analyzing a habeas petition for abuse of the writ:

When a prisoner files a second or subsequent application [for a writ of habeas

corpus], the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's. To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions. The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard. If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

*McCleskey v. Zant*, 499 U.S. 467, 494–95, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991). While *McCleskey* dealt with a petition under 28 U.S.C. § 2254, the abuse of the writ doctrine developed therein "applies equally to § 2255 petitions." *Femia v. United States*, 47 F.3d 519, 523 (2d Cir.1995).

The Government has met its burden in pleading abuse of the writ, having set out its claim "with clarity and particularity, ... not[ing] petitioner's prior writ history, identif[ying] the claims that appear for the first time, and alleg[ing] that petitioner has abused the writ." *McCleskey*, 499 U.S. at 494, 111 S.Ct. at 1470. Accordingly, the burden now rests upon the petitioner to show both cause for the failure to raise the claim in the first petition and prejudice from the errors alleged. *Id.* at 493–94, 111 S.Ct. at 1469–70. In analyzing cause and prejudice, the Court will examine each of Petitioner's claims separately.

As previously stated, Petitioner makes three basic claims: first, that his right to due process was violated when the prosecutor and trial judge allegedly drove one of his witnesses, Dominico Agostino, from the stand with warnings about perjury and lying on the stand, *see Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); second, that subsequent changes in the Sentencing Guidelines show his sentence to have been based on false information and invalid premises; and third, that his Sixth Amendment right to counsel was violated through governmental interference, namely, through the threatening of a key witness and through *ex parte* communications with the Probation Office.

### A. Agostino's Refusal to Testify: the *Webb v. Texas* Claim

Under *McCleskey*, Petitioner must show cause and prejudice for his failure to raise each of his present claims in his prior § 2255 petition. Petitioner argues in his traverse that the filing of this successive petition was due to excusable neglect, and that the petition should not be dismissed because to do so would be inequitable. Pet.'s Traverse at 1–2. By arguing excusable neglect, Petitioner appears to be presenting his argument as to why he has satisfied the cause prong of the showing required under *McCleskey*. Petitioner contends that his failure to raise the present claims in his first petition "is primarily attributable to external impediments erected by the Respondent," relying on the fact that English is his second language and an allegation that the law library at F.C.I. Petersburg—where Petitioner was incarcerated at the time of preparing his first petition—was insufficient, in that various law books were missing, had been cannibalized, or were not kept current. Likewise, Petitioner claims that the paralegal on duty at F.C.I. Petersburg was unable to provide meaningful assistance. Petitioner posits that this amounts to a violation of *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977), and constitutes cause (in Petitioner's language, excusable neglect) for his failure to raise the *Webb v. Texas* claim in his first habeas petition. Pet.'s Traverse at 1–4.

As to Petitioner's claim that English is his second language, there are at least two problems. First, Petitioner's deficiency with English is not "attributable" to Respondent, as Petitioner suggests in his Traverse. Sec-

ond, despite being represented by counsel on the present petition, nowhere does Petitioner claim that any such deficiency materially affected the substance or content of his first habeas petition. His affidavit merely states: "I only have a 9 grade education, and I am unlearned in the law.... I do not fully understand the English language. I speak it a little, but I can best express my self (sic) in Italian." Pet.'s Traverse, Ex. A ¶¶ 1 & 3 (Roccisano Aff. of May 31, 1995). To understand another language better than English is not coterminous with an inability to competently speak and understand English.

Moreover, an examination of Petitioner's first § 2255 petition belies any claim that alleged language barriers caused him prejudice. A seventeen-page Memorandum of Law, signed by the Petitioner, accompanied his first petition; that memorandum eloquently presented Petitioner's case, and carefully examined the facts and law supporting his claims. Even if Petitioner did not prepare his own petition, he could communicate well enough with the person who did so. Petitioner's present counsel has also not suggested, for example, that she could only communicate with Petitioner through an interpreter. Accordingly, on the current record, the Court concludes that there is no merit to any claim of "cause" arising from Petitioner's linguistic ability.

■ Likewise, the Court finds that this claim lacks sufficient specificity or merit to require further development at an evidentiary hearing. *See United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir.1987) ("Not every application that is supported by a set of facially meritorious allegations will survive a motion to deny the writ.... Whether there is a genuine issue of material fact depends upon the sufficiency of those factual allegations. Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing."); *Dalli v. United States*, 491 F.2d 758, 760 (2d Cir.1974) ("Mere generalities ... will not normally entitle the applicant to a hearing").

As to his claim that the law library was insufficient, some courts have suggested a possibility of cause where a petitioner suffi-

ciently alleges that "due to his incarceration ..., he had no reasonable access to, or notice of" the legal rules necessary to determine how to perfect an appeal. *Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir.1992) (applying cause and prejudice analysis in habeas corpus context following petitioner's state procedural default where the default occurred while petitioner was incarcerated in Nevada and had been denied access to the Utah appellate rules when he sought to challenge a Utah conviction); *see also Petrick v. Maynard*, 11 F.3d 991, 994–96 (10th Cir.1993).

In this instance, however, the Court is again troubled by the generality and brevity of Petitioner's allegations that he was denied a constitutionally sufficient law library at the time of his first habeas filing. Petitioner's affidavit on this score merely states:

4. The law library at F.C.I. Petersburg, where I prepared my earlier § 2255 motion, was not adequate to research my case. Many of the volumes were missing, and those that were there has lots of pages torn out. The only people to show you how to look up a case are other inmates, but they really have no training in legal research themselves.

5. The prison had a para-legal on staff, but his job seemed to be answering administrative remedy cases for the warden, the prison and the staff.

6. I asked him if he could show me how to do legal research, and he told me he could'nt (sic) get involved in my case, and to ask the law librians (sic).

7. The law libraians (sic) are all inmates, and they helped me the best they could, but they really did'nt (sic) know what they were doing because no one taught them.

8. There is no course at F.C.I. Petersburg or any other Federal institution (sic) that I know of to teach inmates how to research a case, or use the reporter system or other legal, and court bulletins.

Pet.'s Traverse, Ex. A ¶¶ 4–8 (Roccisano Aff. of May 31, 1995).

The Court has little doubt that Petitioner's affidavit neither requires it to find cause, or even to have a hearing on this issue for the following reasons.

██ A § 2255 petitioner has no absolute right to the assistance of counsel in the preparation of his petition. *See McCleskey,* 499 U.S. at 495, 111 S.Ct. at 1470; *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). While the Government has no obligation to provide the assistance of a person trained in the law to each inmate seeking to collaterally challenge a conviction, in the absence of actual assistance from persons trained in the law, prison authorities must assist inmates by providing them with adequate law libraries. *Bounds,* 430 U.S. at 828, 830–32, 97 S.Ct. at 1498, 1499–1500. Thus, Petitioner's complaints about the inadequacy of assistance given to him (which the Court accepts as true for purposes of this analysis) are not determinative of his claim, but merely focus the Court's inquiry on the quality of the library itself. Petitioner's affidavit thus reduces to one sentence: "Many of the volumes were missing, and those that were there has lots of pages torn out."

While Petitioner's frustration at the prison library is understandable, he must show that the removed volumes and pages contained most, or all, of the references to *Webb v.* *Texas* and its progeny. Again, it is irrelevant that Petitioner could not find cases on a legal issue because no one helped him. Rather, he must show that he could not find the cases because they were not there. Petitioner has made no showing in this regard, and the Court doubts that he could.[1] Here again, it is likely that Petitioner's frustration grew out of the difficulty of legal research, not the quality of the library itself. Without a stronger showing, the Court declines to pursue this tangential issue.[2]

██ Even if the Court were to conclude that the conditions of the Petersburg law library amounted to cause (and, therefore, prejudice[3]), the underlying *Webb v. Texas* claim lacks merit. The admonitions administered by the Court and the Assistant United States Attorney ("AUSA") do not violate the principal recognized in *Webb.* The AUSA was clear that "it's the government's position that if Mr. Agostino ... were to take the stand to exculpate [Petitioner], that [he] would be perjuring [himself], and we believe there would be overwhelming proof of that." The AUSA went on to explain that such perjury would negatively impact the plea

---

1. A Shepard's search of *Webb v. Texas* reveals thirty-five pages of citations. Even discounting some of these citations, it is clear that the case and its progeny had wide circulation well before Petitioner filed his first habeas petition in 1991.

2. No case has been found where a court declared the law library at FCI Petersburg constitutionally inadequate; in fact, but one case has been found that even challenged the adequacy of the FCI Petersburg library, and that case was dismissed as moot upon Plaintiff's transfer to another facility. *See Lyons v. Meese,* 1990 WL 101608, at **1 (4th Cir.1990) (unpublished decision).

3. Petitioner's Traverse claims, without citation to any other case, that no showing of prejudice is required when a *Webb v. Texas* claim is raised. Pet.'s Traverse at 5–6. The Court has found support for this proposition in *United States v. Morrison,* 535 F.2d 223, 227–28 (3d Cir.1976) and in *Webb, see* 409 U.S. at 98, 93 S.Ct. at 353 ("In the circumstances of this case, we conclude that the judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment"). On the present facts, the Court believes that Petitioner has failed to show prejudice, even assuming he could show a meritorious *Webb* claim. Prejudice is absent because, based on the strength of the Government's case, Agostino's testimony would not have affected the outcome of the trial. As Judge Ward found when ruling on Petitioner's prior § 2255 motion:

> Roccisano also cannot demonstrate "prejudice" given the strength of the government's case at trial. Evidence of a conspiracy involving Luciano Cincinnato, Vincenzo Restagno and Domenico Agostino was overwhelming. All that remained to be proved was Roccisano's participation in the conspiracy. There was sufficient evidence to support this element and Roccisano's proffer would do little to undercut the government's proof. Since the most that Roccisano could do would be to chip away at the government's case, Roccisano cannot establish prejudice. For this reason alone, Roccisano's ... claim cannot succeed.

*Roccisano v. United States,* No. 92 Civ. 0323 (RJW), 1992 WL 178582 (S.D.N.Y. July 9, 1992) (Memorandum Decision at 6). The same analysis applies here with equal force. Furthermore, just as Judge Ward pointed out as to Roccisano's claim relating to his wife's testimony, substantial damaging cross-examination would inevitably have followed Agostino's direct testimony. Accordingly, Agostino's "exculpatory" testimony would not have impacted the jury's conclusion of Petitioner's guilt.

agreement with respect to the propriety of points for acceptance of responsibility, and emphasized that his statements were "not meant as a threat." The Court explained to Agostino that "[i]f the government believes your testimony to be truthful, there would be no additional penalties imposed upon you for lying, that is, for perjury. However, the government has taken the position that if you say anything which could be used in evidence against you the government is prepared to use your testimony against you in any subsequent proceedings." The court provided a fair and well-balanced explanation to Agostino of his rights and the possible consequences of testifying falsely. The Second Circuit recently stated that

> a district court certainly has the discretion to ensure that a witness in danger of unwittingly incriminating himself is aware of his constitutional privilege [not to testify], but that exercise of this discretion must be carefully tailored to ensure that warnings do not become threats. A district judge warning a witness must be sure that she does not abuse that discretion by intimidating a witness into silence.

*United States v. Valdez,* 16 F.3d 1324, 1331 (2d Cir.1994). In the opinion of this Court, Judge Ward's warning fell well within his realm of discretion.

This case is not like *Webb,* where the trial court aggressively threatened the prospective witness by stating:

> If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood (sic) is that you will get convicted of perjury.... It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath.

409 U.S. at 96, 93 S.Ct. at 352. Accordingly, because neither the trial court nor the AUSA improperly threatened Agostino before he took the stand, the claim is without merit, and must be dismissed.

**B. Alleged Sentencing Errors**

Petitioner claims that the court sentenced him on the basis of false information and invalid premises by (a) sentencing him for conduct of fellow conspirators prior to his joining the conspiracy, (b) improperly assuming that because one cardboard box contained cocaine, each cardboard box contained cocaine, and (c) applying a two-point enhancement under U.S.S.G. § 3B1.1 without any evidence that Petitioner exercised any degree of control over the activities of his coconspirators. Pet.'s Mem. at 19–20.

 As an initial matter, the sentencing errors claimed by Petitioner are not cognizable in a § 2255 petition. In an appeal involving one of Petitioner's fellow defendants, the Second Circuit explained that "errors in sentencing procedure are cognizable under § 2255 only if petitioner establish[es] that the violation constituted constitutional or jurisdictional error or by showing that the error resulted in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure." *Femia v. United States,* 47 F.3d 519, 525 (2d Cir.1995) (internal citations and quotations omitted). No constitutional or jurisdictional errors are alleged by Petitioner as to his sentencing, nor is there any evidence of a complete miscarriage of justice or a proceeding inconsistent with the rudimentary demands of fair procedure. Accordingly, this aspect of the petition is not cognizable in this collateral challenge, and must be dismissed. *See id.*

 Furthermore, to overcome Respondent's successful pleading of abuse of the writ, Petitioner must show both cause and prejudice to justify a review of this claim on the merits. *McCleskey,* 499 U.S. at 493–94, 111 S.Ct. at 1469–70. Petitioner argues that cause has been shown because this claim is based upon changes in the law, i.e., revisions to the Sentencing Guidelines and cases decided subsequent to his sentencing and his first petition. However, the Court refuses to recognize subsequent changes in the Sentencing Guidelines, or subsequent cases interpreting the same, as cause under *McCleskey* for a successive habeas petition. While the First Circuit has gone so far as to apply post-

sentencing amendments in a § 2255 collateral attack to a sentence, *see Isabel v. United States,* 980 F.2d 60, 62 (1st Cir.1992), the court there did so with virtually no analysis by citing "numerous cases to this effect," none of which involved a § 2255 proceeding. *Id.* (citing *United States v. Perdomo,* 927 F.2d 111, 116–17 (2d Cir.1991) (direct appeal); *United States v. Howard,* 923 F.2d 1500, 1504 & n. 4 (11th Cir.1991) (direct appeal); and, *United States v. Caballero,* 936 F.2d 1292, 1299 n. 8 (D.C.Cir.1991) (direct appeal), *cert. denied,* 502 U.S. 1061, 112 S.Ct. 943, 117 L.Ed.2d 113 (1992)). The First Circuit failed to consider or address the pandora's box that would be opened by allowing each clarification or amendment to the Sentencing Guidelines to reopen a new avenue of collateral attack for every defendant sentenced under a particular provision. Such a result would be absurd, and the Court today specifically rejects the First Circuit's implicit holding in *Isabel.* *Accord Feldman v. United States,* 926 F.Supp. 174, 177 (S.D.Ala. 1996). Likewise, the Court cannot accept the proposition that cases interpreting provisions of the Sentencing Guidelines, and decided after a sentence has become final, are grounds for bringing a successive § 2255 attack on a sentence.

In light of the foregoing, Petitioner's claim challenging his sentence must be dismissed.

C. Ineffective Assistance of Counsel

Finally, Petitioner argues that his right to the effective assistance of counsel was violated when the Government interfered with his representation by threatening a key defense witness (thereby driving him from the stand), and by engaging in *ex parte* communications with the probation office (thereby manipulating the sentencing factors). Petitioner argues that "[b]ut for [these] governmental tactics, defense counsel would have been able to advise defendant of his hopeless position, and advise him to plead guilty." Pet.'s Mem. at 21.

This argument is profoundly lacking in merit. First, it has already been determined above that neither the Government nor the trial court improperly threatened Petitioner's expected witness, Dominico Agostino. Furthermore, this does not constitute a ground for arguing that by this action Petitioner's representation encountered "interference." The only case cited by Petitioner in favor of this claim is *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That case affords Petitioner no support for his claim, and perhaps for this reason his Traverse avoids all mention of this aspect of his petition.

As to the Probation Office claim, Petitioner fails on three counts. First, he provides no authority for the proposition that *ex parte* communications between the Government and the Probation Office are improper. In fact, in this Court's experience, such contacts are appropriate and regular, and could not prejudice a defendant because of the opportunity provided to respond and object to the Presentence Investigation report before, and after, it is provided to the court. Second, Petitioner offers no evidence, by affidavit or otherwise, that such contacts in fact occurred in this instance. Counsel's conclusory statement that the Government manipulated the sentencing factors through *ex parte* communications with the Probation Office offers no substantive assistance to the Court. Finally, Petitioner makes no showing as to "cause" for failing to raise the claim in his prior § 2255 motion. Accordingly, this claim need not detain the Court further: it is without merit. *See Aiello,* 814 F.2d at 113–14; *Dalli,* 491 F.2d at 760 ("Mere generalities ... will not normally entitle the applicant to a hearing").

On direct appeal and in his first § 2255 petition, the constitutional adequacy of Petitioner's representation was affirmed. *United States v. Batista,* No. 90–1167 (2d Cir. Sept. 10, 1990) (summary order); *Roccisano v. United States,* No. 92 Civ. 0323 (RJW), 1992 WL 178582 (S.D.N.Y. July 9, 1992) (memorandum decision). Petitioner appears to press a novel argument in his petition, namely, that counsel's failure to anticipate *future* changes in the Sentencing Guidelines, both in the form of amendments and subsequent cases, constituted ineffective assistance of counsel. Though novel, the claim is unavailing. Reliance upon subsequent changes meets neither the cause re-

quirement for Petitioner's failure to raise this claim in his prior § 2255 motion, nor could it demonstrate ineffective assistance under *Strickland v. Washington,* 466 U.S. 668, 687–88, 693–94, 104 S.Ct. 2052, 2064–65, 2067–68, 80 L.Ed.2d 674 (1988) (requiring Plaintiff to show that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms").

For the reasons set forth above, Petitioner's claim that he received constitutionally ineffective assistance of counsel must be dismissed.

### III. CONCLUSION

The Government's motion to dismiss Petitioner's claim that he was improperly deprived of the testimony of a witness in his defense is hereby GRANTED.

The Government's motion to dismiss Petitioner's claim that his sentence was improperly calculated is hereby GRANTED.

The Government's motion to dismiss Petitioner's claim that he received ineffective assistance of counsel is hereby GRANTED.

Because the Court's holding is based on legal conclusions supported by the present record and file, no evidentiary hearing is required, and Petitioner's request for one is hereby DENIED. *See* Rule 8(a), Rules Governing Section 2255 Proceedings.

The Government's motion having been granted as to each claim, the entire petition is hereby DENIED AND DISMISSED. The Clerk shall dismiss the petition.

There is no probable cause for appeal.

SO ORDERED.