Vincenzo ROCCISANO, Petitioner–Appellant,

v.

Frederick MENIFEE, Warden, Respondent–Appellee.

**Docket No. 00–2471.**

United States Court of Appeals, Second Circuit.

Submitted: June 8, 2001.

Final Briefs Submitted Nov. 5, 2001.

Decided: May 15, 2002.

Vincenzo Roccisano pro se, Otisville, NY, and Chery L J. Sturm, Chadds Ford, PA, for Petitioner–Appellant.

Mary Jo White, United States Attorney for the Southern District of New York, New York, N.Y. (Lauren Goldberg, Andrew C. McCarthy, Celeste L. Koeleveld, Assistant United States Attorneys, New York, NY, of counsel), for Respondent–Appellee.

Before KEARSE, STRAUB, and SACK, Circuit Judges.

KEARSE, Circuit Judge.

Petitioner Vincenzo Roccisano, a federal prisoner who filed a petition under 28 U.S.C. § 2241 seeking relief from his narcotics convictions on the ground that he received ineffective assistance from his trial counsel, appeals from an order of the United States District Court for the Southern District of New York denying his motion for reconsideration of the court's decision to treat his § 2241 petition as a motion for a writ of habeas corpus under 28 U.S.C. § 2255 and to transfer it to this Court for a determination of whether Roccisano should be granted leave to file a successive motion under § 2255 as amended by § 105 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, § 105, 110 Stat. 1214. On appeal, Roccisano contends principally (1) that the district court erred in treating his § 2241 petition as a motion under § 2255; (2) that, although he cannot meet the AEDPA conditions for filing a successive § 2255 motion, those conditions may not constitutionally be applied to him because his only previous § 2255 motions were filed prior to the effective date of AEDPA; and (3) that he should be allowed to proceed because he can satisfy pre-AEDPA standards. For the reasons that follow, we conclude that the district court properly treated Roccisano's § 2241 petition as a § 2255 motion and that, even if AEDPA's gatekeeping, or leave-to-file, requirement is not applicable, Roccisano's petition is not allowable because under pre-AEDPA standards it constitutes an abuse of the writ.

## I. BACKGROUND

In 1989, Roccisano and seven codefendants were indicted on three counts of narcotics violations: (1) conspiring to import more than one kilogram of heroin into the United States and to export more than five kilograms of cocaine, in violation of 21 U.S.C. § 963; (2) conspiring to distribute and possess with intent to distribute unspecified quantities of heroin and cocaine, in violation of 21 U.S.C. § 846; and (3) attempting to export five or more kilograms of cocaine, in violation of 21 U.S.C. § 963 and 18 U.S.C. § 2. Roccisano's codefendants pleaded guilty to one or more of the charges against them. Roccisano was tried alone and was convicted on all counts.

Thereafter, Roccisano fired his attorney and obtained new counsel for his sentencing. The presentence report ("PSR") prepared on Roccisano recommended that he be held responsible for 10.6 kilograms of heroin, making his base offense level 36, see Sentencing Guidelines ("Guidelines") § 2D1.1(c)(4) (drug table) (1989), and recommended a four-step increase in offense level on the ground that he played a leadership role in the offense, see Guidelines § 3B1.1(a). The government agreed with the recommended role adjustment, and it sought to present evidence of Roccisano's

drug activities that was not introduced at trial, arguing for a higher base offense level and urging that he be sentenced to life imprisonment. The district court denied the government's request to present additional evidence, electing to accept the PSR's recommendation with regard to the quantity of narcotics involved; and it decided to increase Roccisano's offense level by only two steps, rather than four, finding that he had been a supervisor in the offense, *see* Guidelines § 3B1.1(c). The court thus concluded that Roccisano's total offense level was 38, making his sentencing range 235–293 months. The court sentenced him to 235 months' imprisonment.

Once again Roccisano fired his attorney; he obtained new counsel for his appeal. On appeal, Roccisano argued, *inter alia,* that the evidence was insufficient to convict him and that the district court erred by failing to hold a hearing as to whether his attorney had impermissibly prevented him from testifying at trial. This Court rejected all of his contentions, affirming in an unpublished decision *sub nom. United States v. Batista,* No. 90–1167(L) (2d Cir. Sept. 19, 1990) (*"Roccisano I"*).

## A. *Roccisano's First Two Motions Under 28 U.S.C. § 2255*

In December 1991, Roccisano filed a motion, *pro se,* under 28 U.S.C. § 2255 (the "1991 Motion"), claiming that he had received constitutionally ineffective assistance from each of his three attorneys. The 1991 Motion alleged that trial counsel had rendered ineffective assistance because he prevented Roccisano from testifying, and because he failed to call Roccisano's sister, wife, and father-in-law as witnesses to provide innocent explanations for Roccisano's association with his codefendants. The 1991 Motion alleged that Roccisano's second and third attorneys were ineffective because they failed, at

sentencing and on appeal, respectively, to call the courts' attention to a provision of the Guidelines that would have resulted in the district court's finding that the quantities of narcotics dealt in by his codefendants were not reasonably foreseeable to him. The district court found that none of Roccisano's claims had merit. *See Roccisano v. United States,* 1992 WL 178582, at *5 (S.D.N.Y.1992) (*"Roccisano II"*). Roccisano appealed to this Court but pursued only his Guidelines-related claim. This Court affirmed in an unpublished summary order. *See Roccisano v. United States,* 992 F.2d 321 (2d Cir.1993) (*"Roccisano III"*).

In March 1995, Roccisano, represented by counsel, filed his second § 2255 motion (the "1995 Motion"), which was also rejected. *See Roccisano v. United States,* 936 F.Supp. 96 (S.D.N.Y.1996) (*"Roccisano IV"*). The 1995 Motion alleged principally that Roccisano's right to present a defense by calling a certain codefendant as a witness had been impeded by the government and the district court and that that interference violated his right to effective assistance of counsel because " '[b]ut for [these] governmental tactics, defense counsel would have been able to advise defendant of his hopeless position, and advise him to plead guilty.' Pet.'s Mem. at 21." *Roccisano IV,* 936 F.Supp. at 103. The government moved to dismiss the 1995 Motion on the grounds that (a) it was an abuse of the writ of habeas corpus because the facts and circumstances it alleged were known to Roccisano when he filed his direct appeal and his 1991 Motion, and (b) it lacked merit. To the extent pertinent here, the district court agreed with both of the government's challenges. It noted that the adequacy of trial counsel's representation had been challenged by Roccisano in both his direct appeal from his conviction, decided in *Roccisano I,* and his 1991 Motion, decided in *Roccisano II,* and it found his

1995 claim of ineffectiveness to be "profoundly lacking in merit." *Roccisano IV*, 936 F.Supp. at 103. This Court, by summary order, eventually affirmed the rejection of Roccisano's 1995 Motion "substantially for the reasons stated by the district court" in *Roccisano IV*. *See Roccisano v. United States*, 1998 WL 382600 (2d Cir. May 5, 1998) ("*Roccisano V*").

### B. *The Present Application*

Roccisano filed his present application *pro se* in February 2000, styling it a petition pursuant to 28 U.S.C. § 2241, again claiming ineffective assistance of counsel. He claims that his trial counsel failed (a) to discuss with him whether the government had offered him a plea bargain, (b) to explain the advantages of pleading guilty, and (c) to describe his potential sentencing exposure should he be convicted at trial. In support of his petition, Roccisano asserts that when he asked his attorney whether or not the government had offered him a plea bargain, and whether he should consider pleading guilty to the charges against him, his lawyer stated, "Sir, if you are considering pleading guilty you are going to have to find another lawyer. I do not plead my clients guilty." (Affidavit of Vincenzo Roccisano dated February 1, 2000 ("Roccisano Aff."), ¶¶ 12–13.) Roccisano asserts that if he had been properly advised by his trial counsel, he would have pleaded guilty to the charges against him:

23. Had [trial counsel] advised me that the sentencing Judge would be permitted to increase my base offense level based upon relevant conduct that was brought to the Court's attention during my trial, and advised me as to the strength of the government's case against me, I would have pled guilty and accepted responsibility.

24. Had [trial counsel] advised me that I faced a potential sentence of 235 months imprisonment, on the low side, under the Sentencing Guidelines if I were convicted at trial, as opposed to a sentence of 188 months or less if I were to plead guilty; I would have pled guilty and accepted responsibility.

25. Had [trial counsel] informed me that there was a strong likelihood that I would be convicted at trial, given the strength of the government's evidence, and, informed me that the government offered me a plea bargain of the sort offered my codefendants[;] I would have either accepted the offer outright, or at least engaged in further plea bargaining, if the government's offer was not fair.

(*Id.* ¶¶ 23–25.)

In an Order dated March 10, 2000, the district court concluded that the present application, despite its characterization by Roccisano as a petition under § 2241, was more properly construed as a motion under § 2255. *See Roccisano v. United States*, No. 00–Civ–2640 (S.D.N.Y. Mar. 10, 2000) ("*Roccisano VI*"). Because Roccisano had filed prior § 2255 motions that were dismissed on the merits, the district court, in accordance with *Liriano v. United States*, 95 F.3d 119, 123 (2d Cir.1996) (per curiam), transferred the matter to this Court for a determination of whether Roccisano should be allowed to file a successive § 2255 motion.

Roccisano moved in the district court for an order pursuant to Fed.R.Civ.P. 59(e) vacating *Roccisano VI*. He asked the court (a) to reconsider its refusal to treat his application as one under § 2241, and (b) to order the government to show cause why the § 2241 petition should not be granted. The district court denied the motion, *see Roccisano v. United States*, No. 00–Civ–2640 (S.D.N.Y. May 19, 2000) ("*Roccisano VII*"), and eventually granted a certificate

of appealability permitting Roccisano to appeal the denial of his Rule 59(e) motion.

### C. The Present Appeal and the Order for Additional Briefing

Still proceeding *pro se*, Roccisano appealed the denial of his Rule 59(e) motion, arguing that the district court's treatment of his § 2241 petition as a § 2255 motion was contrary to this Court's decision in *Adams v. United States*, 155 F.3d 582, 584 (2d Cir.1998) (per curiam), and contending that the district court should have adjudicated his petition. Following submission of the appeal on the original briefs, this Court noted that additional briefing might be required for resolution of all the matters before us:

> This appeal appears to require resolution of the question, *inter alia*, of whether a motion under 28 U.S.C. § 2255 is a "successive" motion within the meaning of [AEDPA], 28 U.S.C. § 2244(b)(3)(A), when all prior § 2255 motions were filed prior to the effective date of AEDPA. This Court has not directly decided this retroactivity question.

Order dated July 2, 2001, at 1. We noted that the issue had been raised in a recent case and that we had appointed counsel to brief the issue on behalf of the petitioner in that case, but we had ultimately found it unnecessary to resolve the issue, *see id.*, because the petitioner there could not meet the standards for filing a successive petition under either AEDPA or pre-AEDPA standards, *see Rodriguez v. Mitchell*, 252 F.3d 191, 203 (2d Cir.2001) ("*Rodriguez*").

We provided Roccisano and the government with copies of the brief filed by appointed counsel in *Rodriguez* and stated that we would take judicial notice of the legal arguments made in that brief on the retroactivity question. We invited the submission of supplemental briefs setting forth such additional arguments as the parties deemed advisable, such as Roccisano's ability to satisfy pre-AEDPA standards of cause and prejudice. Both sides have now presented their supplemental briefs.

## II. DISCUSSION

Roccisano, with the assistance of new counsel, argues principally (1) that the district court should not have treated his § 2241 petition as a § 2255 motion; (2) that, assuming the petition was properly so treated, the gatekeeping provisions of AEDPA cannot be applied retroactively to him because his only prior § 2255 motions were filed prior to the effective date of AEDPA; and (3) that he can satisfy pre-AEDPA standards. For the reasons that follow, we reject Roccisano's first and third contentions; we thus find it unnecessary to reach the second.

### A. Treatment of Roccisano's § 2241 Petition as a § 2255 Motion

Roccisano contends that the district court erred in treating his § 2241 petition as a § 2255 motion, both because he was entitled to seek relief under the former section and because this Court, in *Adams v. United States*, 155 F.3d 582 ("*Adams*"), cautioned district courts against recharacterizing filings as § 2255 motions and dismissing them without providing the petitioner with notice and a chance either to consent to the recharacterization or to withdraw the petition, *see id.* at 584. We reject both contentions.

At all times pertinent to Roccisano, § 2255 has provided that a prisoner in custody under sentence of a federal court may seek

> release[ ] upon the ground that the sentence was imposed in violation of the Constitution or laws of the United

States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack,

28 U.S.C. § 2255, and § 2241 has stated that the federal courts have the power to grant writs of habeas corpus and that "[t]he writ of habeas corpus shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3). However, "[s]ections 2255 and 2241 address different types of claims...." *Chambers v. United States,* 106 F.3d 472, 475 (2d Cir.1997).

■ Under § 2241, a prisoner may challenge the *"execution* of [his] sentence," *id.* at 474 (emphasis in original), such as calculations by the Bureau of Prisons of the credit to be given for other periods of detention, or decisions to deny parole, *see id.* at 474–75, or conditions of confinement, *see, e.g., Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir.2001); *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 n. 5 (2d Cir.1991). Section 2255, on the other hand, is the proper vehicle when the federal prisoner seeks "to challenge the legality of the *imposition* of a sentence by a court." *Chambers v. United States,* 106 F.3d at 474 (emphasis in original). As a "general rule," when collaterally attacking a sentence on the ground that he was convicted in violation of the Constitution or federal law, "a federal prisoner must use § 2255." *Triestman v. United States,* 124 F.3d 361, 373 (2d Cir.1997) ("*Triestman* "); *see also Jiminian v. Nash,* 245 F.3d at 146–47 (" § 2255 is generally the proper vehicle for a federal prisoner's challenge to his conviction and sentence"). In sum, a § 2255 motion is "directed to the sentence as it was imposed, not to the manner in which it is being executed.... In contrast, a motion under § 2241 challenges the exe-

cution, not the imposition, of the sentence." *Corrao v. United States,* 152 F.3d 188, 191 (2d Cir.1998) (internal quotation marks omitted).

■ Although *Triestman* also held, as an exception to these general rules, that when § 2255 relief is no longer available a § 2241 petition may be filed by a prisoner "who can prove his actual innocence on the existing record—and who could not have effectively raised his claim of innocence at an earlier time," 124 F.3d at 363, Roccisano does not fit within that exception. His present petition does not seek an opportunity to prove his innocence but instead seeks a benefit he asserts he would have received if he had pleaded guilty. Further, he concedes that the evidence against him, which "included the testimony of an unindicted coconspirator, the fruits of physical and electronic surveillance conducted by the Federal Bureau of Investigation, and evidence seized from the persons and homes of [Roccisano's] codefendants," was "overwhelming." (Roccisano Aff. ¶ 19.)

■ In sum, Roccisano's present petition, in attacking his sentence on the ground that his conviction was obtained in violation of his Sixth Amendment right to the effective assistance of counsel, challenges the sentence's imposition, not its execution. Thus, we see no error in the district court's ruling that the petition was properly viewed as a motion under § 2255.

■ Nor is there merit in Roccisano's contention that *Adams* required the district court to give him an opportunity to withdraw his petition rather than have it treated as a § 2255 motion. In *Adams,* a defendant who had not previously made a collateral attack on his conviction filed a motion to dismiss the indictment for lack of territorial jurisdiction, invoking Fed. R.Crim.P. 12(b)(2); the district court con-

strued the motion as a § 2255 petition and, finding it to be without merit, dismissed it. We noted that that treatment of Adams's motion could have unfortunate consequences if Adams later sought to file a § 2255 motion, because the later motion would be deemed his second and could not be filed without meeting AEDPA's leave-to-file standards for second or successive § 2255 motions. We thus cautioned the district courts that, prior to dismissing an application recharacterized as a § 2255 motion, they should give the movant an opportunity to withdraw the application in order to avoid that consequence. *See* 155 F.3d at 584.

The *Adams* principle, however, does not apply to a prisoner who has already had one or more § 2255 motions dismissed on the merits, because the AEDPA leave-to-file requirement is already applicable to him. He therefore cannot suffer an *Adams*-type disadvantage by reason of having his application treated as one under § 2255. *See, e.g., Jiminian v. Nash,* 245 F.3d at 148.

> Accordingly, district courts may construe [such] § 2241 petitions . . . as second or successive § 2255 motions without providing the movant with notice and an opportunity to withdraw the motion.

*Id.; see also id.* at 145 ("when a federal prisoner who has already had a § 2255 motion dismissed on the merits attempts to use § 2241 to raise claims that could have been raised in a prior § 2255 motion, district courts should construe the petition as a second or successive § 2255 motion . . . .").

We conclude that Roccisano's present § 2241 petition was properly construed as a motion under § 2255, and his prior § 2255 motions had been dismissed on their merits. His petition is thus a successive § 2255 motion.

B.  *Permissibility of Roccisano's Present Petition*

As amended by AEDPA in 1996, § 2255 provides, in pertinent part, that a second or successive § 2255 motion may not be filed unless the appropriate court of appeals certifies that the motion is based on

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255 (Supp. V 1999); *see also* 28 U.S.C. § 2244 (Supp. V 1999) ("No circuit or district judge shall be required to entertain an application for a writ of habeas corpus" by a federal prisoner "if it appears that the legality of such detention has been determined . . . on a prior application for a writ of habeas corpus, except as provided in section 2255."). The AEDPA leave-to-file amendments "expressly limited successive § 2255 challenges." *Triestman,* 124 F.3d at 372.

Even prior to the enactment of AEDPA, however, it was well established that a habeas petition could be dismissed for abuse of the writ if it asserted a claim that the petitioner could have raised in a prior petition. The standards governing the filing of such successive petitions, as enunciated in *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), generally required that

> a petitioner seeking to file a second or successive petition raising a claim that he failed to include in his initial petition . . . "show cause for failing to raise it

and prejudice therefrom." 499 U.S. at 494, 111 S.Ct. 1454, 113 L.Ed.2d 517. To establish cause, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to raise the claim" in the prior petition—factors such as interference by officials or the unavailability of relevant facts. *Id.* at 493–94, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (internal quotation marks omitted). To establish prejudice, the petitioner "must show actual prejudice resulting from the errors of which he complains." *Id.* at 494, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (internal quotation marks omitted). He must establish, in other words, that the errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Femia v. United States,* 47 F.3d 519, 524 (2d Cir.1995) (quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)) (internal quotation marks omitted).

*Rodriguez,* 252 F.3d at 203–04 (emphasis in *Frady* ). *See also McCleskey v. Zant,* 499 U.S. at 494 (where the government brings to the court's attention the petitioner's prior writ history, identifies claims that appear for the first time in the new petition, and alleges that petitioner has abused the writ, the burden is on the petitioner to disprove abuse of the writ).

Roccisano does not contend that his present application meets the AEDPA standards for allowing the filing of a successive § 2255 motion. He contends, however, that he meets the pre-AEDPA standards by showing cause for his failure to raise his present claim in his prior § 2255 motions and prejudice as a result of counsel's alleged failures. We are unpersuaded that he has made either showing.

As cause for failing to raise his present claim that counsel refused to allow him to plead guilty and failed to give him adequate information as to the strength of the government's case against him and the sentence he would likely receive if he were convicted, Roccisano states principally that the claim is based chiefly on this Court's decision upholding a similar ineffective-assistance-of-counsel claim in *Boria v. Keane,* 99 F.3d 492 (2d Cir.1996) (as corrected through July 11, 1996) (*"Boria "*), *cert. denied,* 521 U.S. 1118, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997); *see also Boria v. Keane,* 90 F.3d 36, 37 & n. 2 (2d Cir. July 17, 1996) (per curiam) (clarifying *Boria* ); he points out that when he filed his first two § 2255 petitions, *Boria* had not been decided. Roccisano's contention that he could not assert his present claim until he learned of our decision in *Boria* is meritless, however, for the principle applied in *Boria, i.e.,* that the right to effective assistance of counsel encompasses the accused's right to be informed by his attorney as to the relative merits of pleading guilty and proceeding to trial, was hardly novel, having been articulated clearly by the Supreme Court nearly a half-century earlier, *see Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.").

In *Boria,* we applied this principle in holding that an attorney had rendered constitutionally deficient assistance to the defendant by failing to discuss with him the advisability of accepting or rejecting a proffered plea bargain that would have resulted in a prison term of one-to-three years, where the attorney felt it would be "suicidal" to go to trial and the defendant, after going to trial, received a sentence of

20 years to life. *See* 99 F.3d at 494–95. We noted that although our own Court had not previously been called upon to articulate the rule that an accused is entitled to receive such advice, our holding was based principally on the standards for claims of ineffective assistance of counsel set out more than a decade earlier in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and on well established principles set forth in American Bar Association ("ABA") guidelines:

> While the Second Circuit may not have spoken, the *Strickland* Court has indicated how the question should be resolved. Just before starting its discussion of the merits, it observed that it had "granted certiorari to consider the standards by which to judge a contention that the Constitution requires that a criminal judgment be overturned because of the actual ineffective assistance of counsel." 466 U.S. at 684, 104 S.Ct. at 2063. Later it pointed to "[p]revailing norms of practice as reflected in American Bar Association standards" as guides "to determining what is reasonable." *Id.* at 688, 104 S.Ct. at 2065.

The American Bar Association's standard on the precise question before us is simply stated in its Model Code of Professional Responsibility, Ethical Consideration 7–7 (1992):

> A defense lawyer in a criminal case has the duty to advise his client fully on *whether a particular plea to a charge appears to be desirable.* (emphasis added)[.]

*Boria,* 99 F.3d at 496; *see also ABA Standards for Criminal Justice Prosecution Function and Defense Function,* Standard 4–5.1 & Commentary, at 197–98 (3d ed.1993) (client is entitled to advice of counsel "concerning all aspects of the case, including a candid estimate of the probable outcome," "the probable outcome of alternative choices," "the maximum and minimum sentences that can be imposed," and, "when ... possible, what sentence is likely"); *id.* at xii, 198 (substance of this standard unchanged since 1980 edition).

Further, as recognized in *Boria,* the principle articulated by the Supreme Court in *Von Moltke* in 1948 had been reiterated decades prior to *Boria* by other circuit courts of appeals in *Walker v. Caldwell,* 476 F.2d 213, 224 (5th Cir.1973), and *Jones v. Cunningham,* 313 F.2d 347, 353 (4th Cir.), *cert denied,* 375 U.S. 832, 84 S.Ct. 42, 11 L.Ed.2d 63 (1963), and by the district court in which Roccisano was convicted and filed his 1991 and 1995 Motions, *see Boria,* 99 F.3d at 497 ("[I]n *United States v. Villar,* 416 F.Supp. 887, 889 (S.D.N.Y. 1976), Judge Motley ... made the following observation about effective assistance of counsel: Effective assistance of counsel includes counsel's informed opinion as to what pleas should be entered.").

In sum, the principle that defense counsel in a criminal case must advise his client of the merits of the government's case, of what plea counsel recommends, and of the likely results of a trial, was established long before Roccisano was even prosecuted. Roccisano plainly was aware of the factual basis for his present claim, knowing what counsel's advice to him had been. The fact that *Boria* had not yet been decided gave him no excuse for not raising his present claim at least as early as his first § 2255 motion.

■ Roccisano also attempts to show cause for failing to advance his present ineffective-assistance-of-counsel claim in his 1991 Motion by stating in his supplemental brief that the library at his place of confinement was inadequate because "[v]olumes of the Federal Reporter were missing" and "[p]ages were ripped out of volumes." (Roccisano supplemental brief on appeal at 17.) Such general and conclu-

sory statements provide no basis for a finding of cause, especially in light of pertinent authorities dating back at least to 1948.

■ Nor has Roccisano shown that the alleged failure of his attorney to recommend a plea of guilty caused him prejudice. He asserts that because his codefendants who pleaded guilty were sentenced to prison terms ranging from 41 to 188 months, he would have been sentenced to less than 235 months had he pleaded guilty. This argument is entirely speculative. The nature of Roccisano's offense and his role in the conspiracy, according to the PSR, warranted a total offense level of 40, for which the Guidelines recommended a prison term of 292–365 months. Roccisano has presented no evidence that the government offered him any plea bargain at all, much less one that would have gotten him a sentence below 235 months, *i.e.*, some 5–10 years less than the recommended range. Indeed, his speculation seems fanciful given the government's efforts, discussed in Part I above, to have him sent to prison for life.

■ Finally, we note that where a petitioner has failed to raise an available claim at an earlier opportunity and cannot meet the cause-and-prejudice test,

> "the failure ... may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey*, 499 U.S. at 494–95, 111 S.Ct. 1454, 113 L.Ed.2d 517. A fundamental miscarriage of justice occurs only in those "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *Id.* at 494, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517.

*Rodriguez*, 252 F.3d at 204. Roccisano fails to meet this standard as well. As discussed in Part II.A. above, Roccisano concedes that the evidence of his guilt was "overwhelming." (Roccisano Aff. ¶ 19.) And even if probable innocence is not always required, Roccisano's sentencing contentions cannot meet the "fundamental miscarriage of justice" test because, as discussed above with respect to his failure to show prejudice, Roccisano has made no showing that a plea of guilty would likely have gained him a shorter sentence.

### CONCLUSION

We have considered all of Roccisano's contentions in this matter and have found no merit in either his challenge to the district court's treatment of his § 2241 petition as a § 2255 motion, or his contention that the present application—his third collateral attack on the assistance provided by his trial counsel—is not an abuse of the writ. The order of the district court is affirmed; authorization to file is denied. The § 2255 motion is dismissed as an abuse of the writ.